[L. A. No. 2765. Department One.—December 5, 1911.]

T. W. PRICE, and LOREN WHITMORE, Respondents, v. A. C. L. DE REYES and M. L. REYES, her Husband, Appellants.

BOUNDARY — AGREEMENT FOR LOCATION — ACQUIESCENCE IN LINE AS LOCATED.—Where coterminous landowners, being uncertain of the. true position of their common boundary line, agree upon its true location, mark it upon the ground, or build up to it, occupy on each side up to the place thus fixed and acquiesce in such location for a period equal to the statute of limitations, or under such circumstances that substantial loss would be caused by a change of its position, such line becomes, in law, the true line called for by the respective descriptions, regardless of the accuracy of the agreed location, as it may appear by subsequent measurements.

ID.—PAROL AGREEMENT FOR LOCATION—STATUTE OF FRAUDS—TITLE HELD TO AGREED LINE UNDER DEEDS.—The agreement as to the line may be in parol, and it does not operate to convey title to the land which may lie between the agreed line and the true line, but it fixes the line itself, and the description carries title up to the agreed line regardless of its accuracy. Such agreement is not in violation of the statute of frauds, because it does not transfer title. The parties

hold up to the agreed line by virtue of their original deeds and not by virtue of the parol agreement.

ID.—EVIDENCE—FINDINGS.—The facts of the present case are directly within the foregoing rules, and necessitate findings and judgment in favor of the defendants.

ID.—UNCERTAINTY OF BOUNDARY—DISPUTE AS TO BOUNDARY NOT NECESSARY.—Such rule is applicable where the location of the boundary is merely uncertain. It is not necessary for its application that the true location must have been absolutely unascertainable, or that there should have been a dispute as to the true boundary prior to the agreement as to the location.

ID.—ADVERSE POSSESSION—PAYMENT OF TAXES ACCORDING TO DESCRIPTION IN DEED.—As a division line thus established attaches itself to the deeds of the respective coterminous owners, and defines the lands described in each deed, so that the one in the possession of the overlap holds title thereto by the same tenure as he holds the lands technically embraced in the description, the payment of taxes on the land assessed according to such description, is a payment of taxes on the land included in the overlap, for the purpose of establishing a title thereto by adverse possession.

ID.—EVIDENCE OF CHANGE IN LOCATION OF ADJOINING STREET—COUNTY SURVEYOR'S MAP.—In an action involving the determination of a boundary line, in which the defendant relies upon its location in accordance with such an agreement, a county surveyor's map is admissible in evidence for the purpose of showing the difference, if any, between the location of an adjoining street at the time of the trial, and its location as shown on a previous map to which reference was made in the descriptions in the deeds of the respective parties.

ID.—EVIDENCE OF ACQUIESCENCE—IDENTITY OF LAND TO BE PURCHASED.—In such action, the defendants were entitled to introduce evidence to prove the acquiescence of the respective owners of the property adjoining in the location of the line to their fences, and to prove that at the time the plaintiffs and each of their predecessors in interest purchased, the lot to be sold to them was pointed out to them as the lot to the north of the defendant's property.

APPEAL from an order of the Superior Court of Los Angeles County refusing a new trial. Leon F. Moss, Judge.

The facts are stated in the opinion of the court.

George L. McKeeby, for Appellants.

M. W. Conkling, and Cyril H. Bretherton, for Respondents.

SHAW, J.—This is an action to quiet title to a strip of land eighteen inches in width lying within the enclosure of the de-

fendants, extending along the north line thereof. The real object of the action is to ascertain and adjudge the location of the boundary line between the land of plaintiffs and that of the defendants. The judgment went for the plaintiffs, the defendants' motion for a new trial was denied, and from this ruling the defendants appeal.

The decision of the court below, upon the facts appearing in evidence, was contrary to a long line of decisions of the supreme court of this state establishing the rule applying to the location of boundary lines between coterminous landowners, beginning with *Sneed* v. *Osborn*, 25 Cal. 619, and ending with *Dundas* v. *Lankershim S. Dist.*, 155 Cal. 692, [102 Pac. 925]. The other cases are the following: *Columbet* v. *Pacheco*, 48 Cal. 397; *Cooper* v. *Vierra*, 59 Cal. 282; *Biggins* v. *Champlin*, 59 Cal. 116; *Johnson* v. *Brown*, 63 Cal. 393; *Truett* v. *Adams*, 66 Cal. 223, [5 Pac. 96]; *White* v. *Spreckels*, 75 Cal. 616, [17 Pac. 715]; *Burris* v. *Fitch*, 76 Cal. 398, [18 Pac. 864]; *Helm* v. *Wilson*, 76 Cal. 485, [18 Pac. 604]; *Cavanaugh* v. *Jackson*, 91 Cal. 583, [27 Pac. 931]; *Dierssen* v. *Nelson*, 138 Cal. 398, [71 Pac. 456]; *Lewis* v. *Ogram*, 149 Cal. 508, [117 Am. St. Rep. 151, 10 L. R. A. (N. S.) 610, 87 Pac. 60]; *Young* v. *Blakeman*, 153 Cal. 481, [95 Pac. 888].

The rule is thus stated in *Young* v. *Blakeman*, 153 Cal. 481, [95 Pac. 888]: "When such owners, being uncertain of the true position of the boundary so described, agree upon its true location, mark it upon the ground, or build up to it, occupy on each side up to the place thus fixed and acquiesce in such location for a period equal to the statute of limitations, or under such circumstances that substantial loss would be caused by a change of its position, such line becomes in law, the true line called for by the respective descriptions, regardless of the accuracy of the agreed location, as it may appear by subsequent measurements." And again, to this effect: "The line so agreed on becomes in legal effect the true line, the agreement as to the line may be in parol and it does not operate to convey title to the land which may lie between the agreed line and the true line, but it fixes the line itself and the description carries title up to the agreed line regardless of its accuracy; the agreement as to the line is not in violation of the statute of frauds, because it does not transfer title; the parties hold up to the agreed line by virtue of their original deeds

and not by virtue of the parol agreement; 'the division line when thus established attaches itself to the deeds of the respective parties and simply defines not adds to, the lands described in the deeds,' and if more is thus given to one than the calls of his deed actually require he 'holds the excess by the same tenure that he holds the main body of his land.' "

The facts appear from the evidence without substantial contradiction and may be briefly stated. In 1888 a map was filed in the office of the recorder of the county showing a subdivision of land into lots and blocks, known as the map of Hollywood. Upon this map was delineated a block numbered 4 consisting of several acres of land. On the westerly side of this block Cahuenga Avenue was located and upon its southerly side a street now known as Sunset Boulevard, the intersection of the two streets forming the southwest corner of the block. In 1896 the street known as Sunset Boulevard was widened and straightened so that the lines, as then established, included some of the property situated northerly thereof. The owners of the property, among them the owner of said block 4, executed a deed granting to the county the portions of their property lying within the lines of the streets as thus widened. In the year 1899 Joseph R. Bennett had become the owner in fee of a portion of block 4 fronting upon Cahuenga Avenue, including the lot of the plaintiffs and that of the defendants. On December 2, 1899, he conveyed to the defendant A. C. L. de Reyes, who is the wife of her co-defendant, a part of this block fronting 103 feet on the easterly line of Cahuenga Avenue. The description in the deed, declared that the southwest corner of this lot was a point situated 207.5 feet north of the southwest corner of block 4, according to the map of Hollywood recorded in 1888 as aforesaid. The lot conveyed had a depth of 393 feet. Immediately after the deed was executed Bennett pointed out to defendants the four corners of the lot so conveyed and thereupon defendants placed on each corner an iron pipe to mark the corners. Immediately afterward the defendants built a fence along the lines of the lot as thus pointed out by Bennett, and they have ever since maintained the same, occupying and possessing the entire area enclosed therein. Shortly after the fence was built they erected a building at the northwest corner, the north side of which was placed on the line previously occupied by the north fence. It

extended some distance to the rear from Cahuenga Avenue. This building has ever since been occupied by M. L. Reyes as an office. Bennett at that time, and for three years afterwards, lived on the opposite side of Cahuenga Avenue and was fully aware of these improvements and of the possession and claim of the defendants. He made no objection whatever to the claim or possession of Reyes up to the line of the fence so established. On March 25, 1901, Bennett conveyed to Daniel F. Bacon a lot fronting 51.5 feet on the easterly line of Cahuenga Avenue lying directly north of the premises of the defendants. This deed declared that the southwesterly corner of the tract conveyed was situated 310.5 feet north of the intersection of Cahuenga Avenue and Sunset Boulevard and that the line ran thence north along Cahuenga Avenue 51.5 feet. Thus, according to the respective descriptions, and assuming that the corner of block 4 by the map, recorded in 1888, was the same as the intersection of the avenue and the boulevard, as changed in 1896, this lot would be contiguous to and north of the defendants' lot. Bacon afterwards conveyed this tract to Johnson, Johnson conveyed it to Fry, and on October 15, 1902, Fry conveyed it to plaintiffs, each deed having the same description as that given in the conveyance by Bennett to Bacon. Plaintiffs had their lines surveyed and in 1903 they put up a building the north line of which was 51.5 feet north of the Reyes fence leaving space for a driveway between the building and said fence. None of the parties ever disputed the right, title or possession of the defendants to the property within their fences and occupied by the building thereon until more than five years after the defendants' fences and buildings were erected. The exact time of the beginning of this action does not appear. The amended complaint was filed in September, 1907. It is conceded, however, that it was begun shortly before that date. The dispute concerning the location of the boundary line arose a short time before the action was begun. Thereupon a new survey was made and it appears to have been discovered, at least it was proven to the satisfaction of the lower court upon the trial, that the fence was situated eighteen inches north of the true location of the boundary as fixed by the distances stated in the deed executed by Bennett to Reyes in 1899, and that the enclosure of the defendants included a strip of land eighteen

inches wide lying immediately north of the lot described in defendants' deed, said strip being also included in the conveyance by Bennett to Bacon aforesaid and to which by the succession of deeds above mentioned, the defendants had apparently acquired title.

These facts bring the case directly within the rule above stated and the findings and judgment should have been in favor of the defendants. The plaintiffs claim that this rule does not apply where the location of the boundary is merely uncertain but that it must have been absolutely unascertainable. We find no such qualification of the rule stated in any of the authorities. Obviously it could not be thus qualified. It is only where the true location is subsequently ascertained that actions of this kind arise. Consequently, the rule could not apply if the location was unascertainable. According to all the authorities, it is sufficient if the true location is uncertain and the parties fix the boundary because of its uncertainty and afterwards occupy up to it and make improvements thereon. At the time this boundary was fixed Bennett and Reyes were the owners of the respective adjoining lots. The position of the division line had not been marked and was uncertain. Bennett, as the original owner of both tracts, would presumably have knowledge of the location of the lines superior to that of defendants. He pointed them out to Reyes, who desired at that time to know their position. Reyes accepted the location thus fixed. This constituted an agreement as to the location. Reyes acted upon it by building the fence and buildings with the full knowledge and under the observation of Bennett. The succeeding owners took with knowledge of the possession of Reyes up to the fence. Their acquiescence has the same effect as that of Bennett would have had if he had continued to own the lot. It is not necessary for the application of this rule that there should have been a dispute as to the boundary prior to the agreement as to the location. This was expressly decided in *Helm* v. *Wilson*, 76 Cal. 585, [18 Pac. 604].

Title was also established in the defendants by adverse possession. Plaintiffs claim that defendants paid no taxes on the strip in dispute. It is conceded that both parties paid taxes each year assessed according to the descriptions in the respective deeds. As we have seen, a division line thus estab-

lished "attaches itself to the deeds of the respective parties" and defines the lands described in each deed, so that the one in the possession of the overlap holds the title thereto by the same tenure as he holds the lands technically embraced in the description. (*Sneed* v. *Osborn*, 25 Cal. 619; *Young* v. *Blakeman*, 153 Cal. 481, [95 Pac. 888]; *White* v. *Spreckels*, 75 Cal. 616, [17 Pac. 715].) The consequence is that under such circumstances the payment of taxes assessed in this manner is a payment on the land in the possession of the parties. Furthermore, the natural inference would be that the assessor put the value on the land and improvements of each party as disclosed by the visible possession, rather than that he ascertained the true line by a careful survey and assessed to one a part of the possessions of the other. We see no ground upon which the decision of the court below can be sustained.

In view of this conclusion as to the merits of the case we do not find it necessary to discuss the various rulings of the court below upon the introduction of the evidence. We think it proper to state, however, that the county surveyor's map was properly admissible for the purpose of showing the difference, if any, between the location of the line of Sunset Boulevard at the time of the trial and the location of the south line of block 4 as established by the recorded map of Hollywood. The defendants were entitled to introduce evidence to prove the acquiescence of the respective owners of the property adjoining, in the location of the line of their fences. They were also entitled to prove that at the time the plaintiffs and each of their predecessors in interest purchased, the lot to be sold to them was pointed out to them as the lot lying to the north of defendants' property. The rulings of the court upon questions directed to this point seem to have been based chiefly upon the form of the question, which apparently called for the conclusion of the witnesses and not for facts.

The order is reversed.

Angellotti, J., and Sloss, J., concurred.