[L. A. No. 6550. In Bank.—August 31, 1921.]

FREDERICK HENRY NUSBICKEL et al., Respondents,
v. STEVENS RANCH COMPANY (a Corporation),
et al., Appellants.

[1] BOUNDARY — UNCERTAINTY OF TRUE LOCATION — AGREED LINE.—
When two adjoining owners of land, being uncertain as to the true
location of the boundary line between their contiguous land, agree
upon its true location, mark it upon the ground, or build up to it,
occupy on each side up to the place thus fixed and acquiesce in
such location for a period equal to the period of the statute of
limitations, or under such circumstances that substantial loss will
be caused by a change of its position, such line becomes in law
the true line called for by the respective descriptions, regardless
of the accuracy of the agreed location, as it may appear by sub-
sequent measurements, notwithstanding the true position of the
dividing line could always have been determined by a correct meas-
urement or by a survey.

[2] ID.—INTENTION OF ADJOINING OWNERS—EXTENT OF CLAIMS—CON-
SISTENCY WITH DOCTRINE.—The doctrine of agreed boundaries is
not nullified by the fact that adjoining owners never intended to
claim anything beyond the true line. Such intention is entirely
consistent with the doctrine.

APPEAL from a judgment of the Superior Court of Los
Angeles County. John W. Shenk, Judge. Reversed.

The facts are stated in the opinion of the court.

Nichols, Cooper & Hickson for Appellants.

Newmire & Watkins for Respondents.

SHAW, J.—The defendants appeal from a judgment in
favor of the plaintiffs in an action by the plaintiffs against
the defendants to quiet their title to a strip of land lying
along the eastern side of the land in their possession.

The real point in dispute at the trial was the location
of the dividing line between the plaintiffs' land on the west

1. Location of boundary by acquiescence or agreement, notes,
27 Am. Dec. 121; 69 Am. Dec. 711; 27 Am. Rep. 239; 10 L. R. A.
(N. S.) 610.

and the defendants' land on the east. Plaintiffs' land is a
part of the southeast quarter of section 34, township 14
north, range 9 west, in Los Angeles County. The defend-
ants' land is the north half of the southwest quarter of sec-
tion 35 in said township and range. These sections join
each other, section 35 being the easterly of the two. The
common boundary line between them would be the common
boundary line between the lands of the plaintiffs and de-
fendants, respectively. The true line between the sections,
according to private resurveys of the official government
survey, is the line now claimed as the boundary line by the
plaintiffs. The defendants, owning the tract on the east,
claim up to a line situated west of that claimed by the
plaintiffs, and which has been treated and considered as
the dividing line between the two parcels for more than
thirty years prior to the beginning of the action. The dis-
tance between the two lines is 11.35 feet at the south end
and 32.2 feet at the north end.

[1]    The law on the subject of agreed boundaries differ-
ing from the true line is well settled by the decisions of this
court. When two adjoining owners of land, being uncer-
tain as to the true location of the boundary line between
their contiguous land, "agree upon its true location, mark
it upon the ground, or build up to it, occupy on each
side up to the place thus fixed and acquiesce in such loca-
tion for a period equal to the period of the statute of limi-
tations, or under such circumstances that substantial loss
will be caused by a change of its position, such line becomes, in
law, the true line called for by the respective descriptions,
regardless of the accuracy of the agreed location, as it may
appear by subsequent measurements." (*Young* v. *Blake-
man,* 153 Cal. 481, [95 Pac. 890]; *Loustalot* v. *McKeel,* 157
Cal. 640, [108 Pac. 707]; *Price* v. *De Reyes,* 161 Cal. 484
[119 Pac. 893]; *Silva* v. *Azevedo,* 178 Cal. 495, [173 Pac.
929].)

The fact that the true position of the dividing line
"could always have been determined by a correct measure-
ment," or by a survey, does not prevent there being an
uncertainty, within the meaning of this rule, in the minds of
the parties as to the position of the line on the ground.
"This condition exists in virtually every case in which the
aid of the rule is sought." (*Silva* v. *Azevedo,* 178 Cal. 498,

[173 Pac. 930]; *Loustalot* v. *McKeel,* 157 Cal. 641, [108 Pac. 707]; *Price* v. *De Reyes,* 161 Cal. 489, [119 Pac. 893].)

The land claimed by the plaintiffs was originally in the possession of one Marjory Shuler, who entered the same as a homestead about the year 1879. Her death occurred a year or two thereafter, and thereupon her son, Eli W. Shuler, occupied the premises as an entryman under the United States and subsequently obtained the patent therefor. He remained in possession thereof until 1915, when he conveyed the land to the plaintiffs. The land claimed by the defendants was in the possession of one Cunningham as a preemptioner in the year 1880, and in the year 1883 he sold his claim to John A. Stevens, who afterward received a patent from the United States under his claim as pre-emptioner. When Stevens got possession of the land on the east he put up a fence on the line marked as hereinafter stated. From 1883 until 1917 Stevens and his successors in interest, the defendants herein, occupied the premises and used and cultivated the same on the easterly side of the fence, and Eli W. Shuler occupied, used and cultivated the land on the westerly side of the fence until 1915, when he conveyed the same to plaintiffs, and thereafter, until 1917, plaintiffs occupied and used the land up to said fence, but no further, and they did not claim title east of said fence until the year 1917.

The court found that Marjory Shuler, while she was in possession under the United States, employed some person to make a survey to establish a dividing line between the land so occupied by her and that so occupied by Stevens' predecessor in title, and thereupon caused furrows to be plowed along the line of stakes set up by the person employed to make said survey, and that said Stevens' immediate predecessor in title inspected the same and acquiesced in their location. Also, that more than thirty years ago a fence was built by Stevens along a part of the line so located as aforesaid, and that thereafter plaintiffs' predecessor, Eli W. Shuler, completed a portion of the same; that thereafter said fence was kept in repair by the respective occupants on both sides thereof, and that it has ever since remained on the line upon which it was originally con-

187 Cal.—2

structed; that said fence was recognized and accepted by both Stevens and Shuler "so long as they remained the occupants and owners of their respective properties, and was treated by them as being on the line between their respective properties, and each of them occupied and cultivated and farmed the lands on their respective sides of said fence up to the same"; and that said Stevens and Shuler "so long as they remained the owners of their respective properties believed that said fence was located upon the true line."

The findings also state that the line so located was not the true location of the section line as laid out by the government surveyors, and that the surveyor employed by Marjory Shuler did not mark the true division line between said sections. The findings also state that there was not at that time any uncertainty in the true location of said line, but that "solely by and through the mistake of said surveyor the said true east line of said section 34 was not ascertained by the plaintiffs' predecessors, or themselves, until the year 1917," at which time a new survey disclosed the error. There is another finding that the strip of land between the true section line as subsequently ascertained "and the fence so built and maintained as aforesaid has been for a long time past cultivated by the defendants, but that said cultivation was done solely through a mistake in the locating of the said fence line aforesaid and not otherwise; the court finds that it has never been the intention of the plaintiffs and their predecessors to claim anything east from the east line of said section 34, and that it has never been the intention of the defendants to ever claim any land west of said east line of section 34."

It will be observed that all the findings aforesaid, except the one last mentioned and the one to the effect that there was no uncertainty in the line, bring the case precisely within the rule set forth in the authorities heretofore cited.

The finding that "there was no uncertainty in the true location of the said east line of section 34," at the time the survey was made for Marjory Shuler, must, in view of the other findings, be understood merely as a statement of the abstract proposition that it was possible to ascertain the true location thereof by a correct resurvey of the line as

marked by the government surveyors. This finding is immaterial in the application of the doctrine under consideration. The word "uncertainty" is used in the statements of the rule in the decisions to convey the idea that at the time of the location of the division line neither of the coterminous owners knew the true position of the line on the ground. In *Sneed* v. *Osborn,* 25 Cal. 626, in which the doctrine was first laid down in this state, the word "uncertainty" is not used. Even if the parties knew the position of the government monument at the southeast corner of the section, it would not necessarily follow that they knew the position of the line at a point a quarter of a mile north of that monument, especially where, as in this case, the ground between the north and the south ends of such section line is mountainous and extremely rough and steep. It should be remembered, in applying the doctrine, that it is only resorted to where the line agreed on is different from the true line. It is this fact that creates the necessity for the doctrine. (9 Corpus Juris, 231.) The belief of the parties for the long period of thirty years following the location, as shown by the findings, is a sufficient reason for the application of the doctrine, so far as that state of mind is essential thereto. The fact that it was founded on a mistake always appears, and must appear, else there would be no occasion to invoke the doctrine.

[2] The facts, as found, that the plaintiffs and Shuler never intended to claim anything east of the true section line and that the defendants never intended to claim anything west of the true section line may have been taken by the learned judge of the court below to have the effect of nullifying the doctrine above stated concerning the agreed boundary, since otherwise he could not have given judgment for the plaintiffs in the action for the strip of land in controversy. This intention, however, is entirely consistent with the doctrine of agreed boundaries. Having agreed upon the line as the true line, and believing that it is, it follows that neither one would intend to claim any land beyond that line, unless he was dishonest in making the agreement. The finding is, therefore, wholly without effect to justify the conclusion of law that plaintiffs are the owners of the strip of land in controversy. Our conclusion is that the

judgment in favor of the plaintiffs was not justified by the findings.

The judgment is reversed.

Sloane, J., Shurtleff, J., Lennon, J., Wilbur, J., Angellotti, C. J., and Lawlor, J., concurred.