[Civ. No. 4931. Third Appellate District.—December 9, 1933.]

FRANK W. STARRY, Respondent, v. LAWRENCE C. LAKE, Appellant.

Fred W. Carroll and Geo. W. Howe, City Attorneys, for Appellant.

L. F. Puter and John F. Quinn for Respondent.

PARKER, J., *pro tem.*—This is an election contest. Inasmuch as no question is presented concerning the conduct of the election, as such, and no point is made on the manner of conducting the election in so far as the routine thereof is concerned, we may proceed directly to the one point involved.

At a city election held in Crescent City, certain people, residents of a territory described as Randall precinct, presented themselves at the polls and were denied the right to vote upon the ground that Randall precinct, so called, was not a portion of Crescent City; in other words, that Randall precinct was without the geographical and governmental limits of the city.

Without attempt to detail all of the issues presented at the trial, it is conceded by both sides on appeal that if the said Randall precinct be within the city limits of Crescent City then the judgment is to be affirmed; if our conclusion is to the contrary, the judgment of the court below is to be reversed.

We may note in advance that our consideration is confined to the record before us and it may well be that whatever our conclusion may be, from this record, the question would still remain open. By this we mean that we are not holding the procedure here invoked as sufficient to determine the point as against direct attack by the state or by any other party interested, in any other form of action.

The territory comprising Crescent City was originally a portion of what was then called Klamath County, in California. Some time prior to 1853 a settlement was founded there and a new city born. The land embraced within the limits of the proposed town was then unsurveyed public land belonging to the United States. The residents of the then town, through the governing authority thereof, in 1853 directed the survey and platting of the territory contemplated to be embraced in and constituting the proposed city. This survey was made by one Robinson. A plat and map thereof was duly made and filed, which survey and map will be hereinafter referred to as the Robinson map.

In 1854 the legislature of the state of California enacted a statute entitled "An Act to Incorporate Crescent City." In this act (Stats. 1854, p. 68) the boundaries of Crescent

City are set forth as follows: Commencing at a point established by T. P. Robinson, county surveyor of Klamath County, east of Elk Creek; running thence south to low-water mark and north twenty-five chains and —— links; thence west one mile; thence south to low-water mark; and thence following low-water mark to the intersection of the east line. The territory remained unsurveyed public land the title to which remained in the federal government. The statutes then in force regulating the disposal of the public domain provided for the establishment of towns and town sites upon the public domain and for the conveying of the lands actually occupied by and in such settlements to the actual settlers and inhabitants. According to the terms of the statute and the rules of the general land office it was required that the town sites be within regular legal subdivisions and platted in accord therewith.

In 1863 and 1864, the council of Crescent City, preliminary to making application for patent to the lands embraced within the settlement, ordered another survey which when completed was known as Randall survey. This survey coincided with the sectional lines and embraced the territory in dispute here, namely, Randall precinct. In 1886 the federal land department issued a patent to the town of Crescent City for the land embraced within the Randall survey. This patent ran as a trust for the benefit of the actual settlers and occupants of the lands embraced therein. It was issued pursuant to the provisions of the federal statutes governing the selection and location of town sites, which statutes commenced with the act of 1820 and included acts supplementary thereto as enacted in the years 1843, 1844, 1864 and 1867. By and through these several enactments the federal government has recognized the necessity of community settlement and organization and has made provision for the disposal of public lands to such communities in addition to the methods of private acquisition of the public domain.

Inasmuch as the regulations governing did provide that patents should issue to such lands only when and as occupied by actual *bona fide* occupants in possession of the lands for the purposes of a town site it is obligatory upon us to assume that a finding was made by a public authority authorized and directed to inquire and that before patent issued it was found that the territory sought was then actu-

ally occupied as a town site and that patent issued only to such lands as were actually occupied as a town. From the date of the patent (1866) the town authorities and all of the residents thereof have considered the boundaries of Crescent City as being coextensive with the Randall survey and thus including Randall precinct.

In 1883 the legislature enacted a statute entitled "An Act to Provide for the Organization, Incorporation and Government of Municipal Corporations." (Stats. 1883, p. 93.) This act was all-embracing and did with great detail provide for the organization and classification of all municipalities within the state desirous of adopting the provisions of the statute. Crescent City, through its governing body elected to organize itself into a city of the sixth class under the terms of the statute and upon compliance with the procedure outlined Crescent City did in 1885 reorganize as a city of the sixth class and in such reorganization did include within the city limits the territory of Randall precinct.

It is an undisputed fact in the case that for approximately sixty years Randall precinct has been considered a part of Crescent City. The governing authority of the city in levying taxes, assessment for public improvements and in all municipal affairs has treated Randall precinct as a part of Crescent City. The residents thereof have continuously voted at city elections at all elections prior to the one here in question. Without detailing the various matters of municipal cognizance in which Randall precinct and its residents participated with the remainder of Crescent City as an undivided whole it may be stated that in every respect Randall precinct and its inhabitants were a part and portion of Crescent City and its government. During all of this time the federal census authorities enrolled the inhabitants of Randall precinct as a portion of the population of Crescent City. In fact, in no manner could it be inferred that Randall precinct had any separate existence. This condition, as outlined, continued on for more than sixty years and then the city council, apparently without any form of judicial or other determination, arbitrarily declared Randall precinct out and its residents and electors not entitled to further participate in any of the city's affairs.

The foregoing suffices to give the picture as the record before us presents the same. It may be that we have amplified minor facts so as to embrace not only the fact but the obvious inference resting therein and which is implied in the trial court's findings. This, however, is but incidental. The facts as stated are undisputed.

 It is the contention of appellant that the whole case hinges on one thing and that is the certainty of the original Robinson survey and the acceptance thereof by the legislature in organizing the city of Crescent City in 1854. The argument is that the lines and calls of the Robinson survey left the question definitely settled and determined for all time; that the boundaries of Crescent City as disclosed from this map were never the subject of doubt, but could be and were easily traced. The answer is that this is but appellant's version of the evidence. The boundaries of the city of Crescent City as disclosed in the statute creating the city adopted the Robinson survey only by reference to a "point" east of Elk Creek. The present testimony discloses that the said point could be located only by a surveyor following the field-notes and by reference to other objects and monuments of doubtful permanence. The monument, if any there ever was, locating this Robinson point is not visible on the ground nor is there evidence disclosing the fact that it ever was visible or capable of independent location. On the other hand, appellant presents evidence directly to the contrary in an effort to overcome the claim of acquiescence. He attempts, and did attempt in the court below, to show that there never was any acquiescence in the boundaries of Crescent City and that the exact boundaries were always the subject of question and dispute.

From sufficient evidence the trial court found that for more than sixty years the territory within said precinct and the residents and inhabitants thereof have been treated and considered by the officers and municipal authorities as a part of Crescent City in all municipal functions and purposes of every kind or character, including municipal waterworks, lighting, street improvements, sanitation, levying and collecting taxes for municipal purposes, holding city elections, policing, bonding for public improvements and in every function that a city of the sixth class possesses.

The case then as outlined, and as far as presented by the record here, seems free from difficulty. We again note, however, that our decision involves only the case and the parties before us. As noted, the proceeding is an election contest. The city of Crescent City is not a party to the action nor is any of its officers. Grave questions may arise upon an adjudication of boundaries and it seems apparent that in such a controversy all parties whose rights are to be in anywise altered should have a day in court. Practically all that is before us is that action of the city council in arbitrarily declaring Randall precinct without the limits of Crescent City and the exclusion of the electors of that precinct from participation in the city election.

We think that the action of the trial court in holding that Randall precinct was within the limits of Crescent City and that the electors thereof were entitled to participate in the city election was a correct solution of the problem presented.

Practically all enforceable law has its genesis in custom and law without the background of custom or in conflict therewith is rarely accepted or subject to uniform enforcement. When a law is based upon a custom the latter is not destroyed, but rather perpetuated and the two go on together with an interpretation harmonious with the combination. This idea is manifested in many instances. For instance, courts will construe a law in harmony with a prevailing construction generally adopted over a period of years; courts will interpret contracts following the interpretation given them by the parties. It is out of this dominant idea that many classes of estoppel have their origin, though perhaps academically classified under more restricted theories. As a natural corollary we find the doctrine of acquiescence and rather than attempting a rigid definition, which in the very nature of the doctrine would be indefinable within any arbitrary limits, we turn to the authorities for illustration.

Long acquiescence in the location of municipal boundaries by the local corporation and the inhabitants thereof where all municipal action and improvements have been done under the assumption that such are the boundaries will support the conclusion that they are the true boundaries, notwithstanding they were not originally so located and, hence, indefinite and uncertain. (McQuillin on Municipal Cor-

porations, vol. 1, p. 705.) Without quotation that same doctrine is announced by this author in the sections and pages following the cited page. Our own Supreme Court quotes from this authority in the case of *City of Alameda* v. *City of Oakland,* 198 Cal. 566, at page 576 [246 Pac. 69, 73], and in referring to the facts of the case under consideration the court says:

"The issues presented in this case from the standpoint of both the law and the facts were properly the subject of legitimate controversy because of the uncertainty of the location of said boundary line and were therefore the proper subject of the application of the doctrine of acquiescence."

In the cited California case the Supreme Court definitely and unequivocally recognizes and upholds this doctrine and cites the case of *Michigan* v. *Wisconsin,* decided by the United States Supreme Court and reported in 270 U. S. 295 [46 Sup. Ct. 290, 298, 70 L. Ed. 595]. Without quotation from this Michigan-Wisconsin case, we may note that not once, but several times, the United States Supreme Court, in unmistakable language, sets up the doctrine of long acquiescence paramount to recollection of witnesses produced on either side. The doctrine as announced by this tribunal of last resort is stated thus:

"It is a principle of public law universally recognized, that long acquiescence in the possession of territory and in the exercise of dominion and sovereignty over it, is conclusive of the nation's title and rightful authority."

Numerous authorities, both state and federal, might be cited, but the foregoing suffice the needs of the present discussion.

Appellant urges that inasmuch as the lines of the Robinson survey could be traced out by a surveyor and located at any time there could be no uncertainty as to the boundaries of Crescent City. The record does not support appellant's premise that the lines could be so traced out, but conceding this to be true, yet that does not arbitrarily solve the question of uncertainty. (*Price* v. *De Reyes,* 161 Cal. 484, 489 [119 Pac. 893]; *Silva* v. *Azevedo,* 178 Cal. 495, 498 [173 Pac. 929]; *Nusbickel* v. *Stevens Ranch Co.,* 187 Cal. 15, 16 [200 Pac. 651].)

Going further on this point the undisputed facts are that in addition to the Robinson survey there was the Randall

survey, the patents to the city of Crescent City, and the organization of the city into a city of the sixth class. Assuming that the boundaries of Robinson survey were certain and definite, likewise were the boundaries as outlined by the Randall survey certain; also the description as given in the patents to the town site and the description set forth in the reorganization as a city of the sixth class. With all but the Robinson survey agreeing on the Randall survey, there surely was enough to present an uncertainty as to the correct boundaries of the city and an ideal setup was presented for the application of the acquiescence doctrine.

From the foregoing we conclude that the court below was correct in holding that Randall precinct was and is a portion of Crescent City, within the territorial limits of said city and that the electors residing in said precinct could not arbitrarily be denied the right of suffrage.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 8, 1934.