[Civ. No. 5173. Fourth Dist. Aug. 20, 1956.]

MANUEL CABALLERO et al., Appellants v. JOHN G. BALAMOTIS et al., Respondents.

Allan Lame for Appellants.

James B. Abbey for Respondents.

MUSSELL, J.—In this action to quiet title, plaintiffs claim ownership of two parcels of land in the city of San Ysidro, in San Diego County. Parcel 2 is situate on the northeast corner of Willow Road, which runs north and south, and Bolton Hall Road, which runs east and west, in said city, and Parcel 1 adjoins it on the east. Parcel 2 extends approximately 368 feet north of Bolton Hall Road along Willow Road and 123 feet east thereof. Parcel 1 has a south frontage of 100 feet on Bolton Hall Road and extends northward therefrom approximately 343 feet. Defendants, whose property adjoins that of plaintiffs on the north, in their answer claim title to a strip of land approximately 10 feet wide, extending 100 feet east and west along and south of the north boundary line of Parcel 1, together with a strip of land extending 123 feet east and west, 3 feet wide at the west end and 10 feet wide at the east end, extending along and south of the north boundary line of Parcel 2. The trial court quieted title in the defendants in accordance with the prayer in their answer.

Plaintiffs appeal from the judgment on the ground that the findings and judgment are not supported by the evidence. We conclude that this contention is without merit.

Plaintiffs purchased Parcel 2 in the fall of 1951 and Parcel 1 in 1953. In January, 1952, plaintiffs caused Parcel 2 to be surveyed and learned that their property, according to the survey, extended northerly beyond a fence which was then in place along the south line of the property involved in this controversy. Plaintiffs removed the fence and on the same day, defendants replaced it, and this action was filed.

The record shows that defendants purchased their property lying north of the two parcels claimed by plaintiffs in 1946. In this connection defendant John Balamotis testified that when he bought his property there was a house on it and a tool shack to the rear and south of the house on the disputed area; that his property was fenced on all sides and the fence on the south side of his property included the disputed area; that the tool shack was located on the disputed area north of Parcel 1; that he occupied and used all of the fenced property from 1946 to the date of the trial; that the fence along the south line of the disputed area has been maintained in place since 1946, except for a period of one day, in 1952, when the plaintiffs removed it; that as soon as he discovered that the fence had been removed, he immediately had it replaced.

Mrs. Green, who had lived in San Ysidro for 30 years, testified that the fence along the south line of the disputed area had been in place for at least 15 or 20 years. A Mr. Preston testified that he had known the defendants for 10 years and was familiar with their property; that it was all fenced and that the fence along the south boundary of Balamotis' property had been there for approximately 25 years. Lorenzo Judd, a resident of San Ysidro for 40 years, testified that the fence had been in the same place at least 20 years, and Virginia Laurie testified that she purchased the property now owned by Balamotis in 1941; that the property was then fenced and the fence on the south boundary line was in the same location as it was at the time of the trial; that there was a shed at the back of the property which was built between 1941 and 1943. The chief appraiser in the San Diego County assessor's office testified that the shed on the disputed area was assessed to the defendants Balamotis.

Plaintiffs introduced in evidence tax bills showing payment of taxes by them on the property described as Parcel 2 and

on Lot 1, Boundary Tract, San Ysidro. Several witnesses testified in behalf of plaintiffs that the fence involved had been torn down once and had not been replaced for about a month.

The trial court found, among other things, that for many years a substantial fence has extended in a general easterly and westerly direction across the northerly portion of the real property described in plaintiffs' deeds; that the said fence is plainly marked upon a map attached to the judgment; that said fence still exists and is plainly visible upon said property; that ever since 1946 the defendants have used and occupied the real property immediately northerly of said fence and the use and occupancy of said property so occupied has been open, adverse, hostile, notorious, continuous and under claim of right since the year 1946; that defendants have paid taxes on said disputed area; that there was an uncertainty in the boundary line between the property of plaintiffs and defendants and that the said fence has, by the many years of its existence and by common consent and acquiescence of the owners of the land contiguous thereto, become the true boundary between the lands of the parties. These findings are supported by substantial evidence and are sufficient to support the judgment.

Plaintiffs argue that both parties paid taxes according to the descriptions in their respective deeds and that to claim ownership by adverse possession, defendants must prove payment of taxes on the disputed area.

In *Carr* v. *Schomberg*, 104 Cal.App.2d 850, 860 [232 P.2d 597], the court said:

"Once it is found that the parties agreed upon a boundary, the payment of taxes according to deed descriptions amounts to payment of taxes on the area up to the agreed-upon boundary. The proper rule was stated as follows in *Price* v. *De Reyes*, 161 Cal. 484, 489 [119 P. 893] : 'It is conceded that both parties paid taxes each year assessed according to the descriptions in the respective deeds. As we have seen, a division line thus established "attaches itself to the deeds of the respective parties" and defines the lands described in each deed, so that the one in the possession of the overlap holds the title thereto by the same tenure as he holds the lands technically embraced in the description. [Citing cases.] The consequence is that under such circumstances the payment of taxes assessed in this manner is a payment on the land in the possession of the parties. Furthermore, the natural infer-

ence would be that the assessor put the value on the land and improvements of each party as disclosed by the visible possession, rather than that he ascertained the true line by a careful survey and assessed to one a part of the possession of the other.' "

In the instant case the evidence establishes that an agreed boundary line existed for many years and that the county assessor put a value on defendants' land and improvements as disclosed by the visible possession of the defendants.

Plaintiffs argue that the evidence was insufficient to establish an agreed boundary line. This contention is without merit. In *Mello* v. *Weaver*, 36 Cal.2d 456, 460 [224 P.2d 691], it is held that an agreement to locate a boundary line need not be express, but it may be implied from long acquiescence; that the implied agreement must have been based on a doubtful boundary line; that a dispute or controversy is not essential but it may be evidence of the existence of a doubt or uncertainty; that it is not required that the uncertainty should appear from the deed or from an attempt to make an accurate survey from the calls in the deed; that a doubt may arise from a believed uncertainty which may be proved by direct evidence or inferred from the circumstances surrounding the parties at the time when the agreement is deemed to have been made, and if in good faith the parties resolve their doubt by the practical location of the common boundary, it will be considered the boundary called for by the deed.

The judgment is affirmed.

Barnard, P. J., concurred.