[S. F. No. 19821. In Bank. Mar. 11, 1959.]

JESSIE F. ERNIE, Appellant, v. TRINITY LUTHERAN CHURCH (a Nonprofit Corporation), Respondent.

Joseph A. Brown and Miguel A. Leite for Appellant.

John B. Ehlen for Respondent.

SHENK, J.—The plaintiff appeals from a judgment quieting title in the defendant church and enjoining the plaintiff from asserting any claim in or to a disputed strip of land 9/10 of a foot wide and 140 feet long located in the city of San Rafael. The issues on appeal are whether the plaintiff failed to prove her cause of action and whether the judgment properly quieted title in the defendant in and to this narrow strip.

The complaint alleged that the plaintiff owned a described parcel of land 55 feet by 140 feet fronting on Fifth Avenue in San Rafael; that the defendant owned the adjoining property to the west; that without her wishes and against her consent the defendant maintained encroachments consisting of a cement walkway, a rectory building and a fence on a strip of land 9/10 of a foot wide within the westerly boundary line for its entire 140-foot length; that the defendant was claiming some right, title or interest in this strip, and that this claim was without right. The answer denied the plaintiff's ownership and asserted defendant's ownership and possession of this strip. Separate defenses based on adverse possession, agreed boundary, and the bar of the statutes of limitation contained in section 318 and subdivision 2 of section 338 of the Code of Civil Procedure were pleaded. The answer prayed that the plaintiff take nothing by her complaint, that the defendant be awarded its costs of court and "such other and further relief as is meet and just in the premises."

The plaintiff introduced as evidence of her title a deed to her from a Mrs. Anna Hock dated May 17, 1944, the description in which included the disputed strip, and a survey map

prepared for the plaintiff in 1952 which showed the extent of the encroachments upon this land. She also introduced evidence that she had paid the taxes on the land deeded to her, and that the description of the adjoining property in a deed to the defendant's predecessor from a Mrs. Clara Hock, dated January 9, 1925, did not include this strip.

It appears without conflict that the evidence supports the findings that in the year 1925 the defendant's predecessor, the St. Matthew's Evangelical Church of San Rafael, owned the property described in Finding II; that in the year 1926 that church built, as an integral part of its church building, a rectory building having a concrete foundation, upon a portion of the disputed strip, described in Finding III; that at that time it built on other portions of this strip a cement walkway about 6 feet wide leading from the southerly line of Fifth Avenue to the rectory; that along the easterly line of this walkway it built a substantial wooden fence, the supporting posts of which were firmly and substantially embedded in the walkway and attached to the rectory building; that at that same time it built a substantial wooden fence, the uprights of which were firmly and substantially embedded in the soil, extending southerly from the rectory along the easterly line of the strip to the rear property line; that continuously, and ever since these structures were erected and until June 30, 1942, the St. Matthew's Evangelical Church was in the sole and exclusive possession of this strip of land; that the church, its parishioners, pastors, Sunday School and Confirmation Classes openly, visibly, peaceably, notoriously, and without objection from anyone used the walkway and rectory for the purposes of the church; that from January 1926 until October 1952 no one made any claim or demand of any kind adverse to the use of, or claim to this strip by the church, its parishioners, pastors, Sunday School and Confirmation Classes; that on June 30, 1942, the defendant purchased its property from St. Matthew's Evangelical Church in the belief that the easterly line of the property purchased was along the easterly line of the strip, and that ever since June 30, 1942, the defendant, its pastors, parishioners, Sunday School and Confirmation Classes have solely and exclusively, openly, visibly, peaceably and notoriously used said cement walkway, said rectory and said fences.

The court found further, also without any conflict in the evidence, that on May 17, 1944, one Mrs. Anna Hock executed a conveyance to the plaintiff of the 55 by 140 foot parcel de-

scribed in Finding VI; that ever since that date the plaintiff has paid all taxes levied or assessed upon this property and that no taxes were at any time levied or assessed upon any easement over the disputed strip; that neither Mrs. Anna Hock, nor the plaintiff at any time used, occupied or possessed this strip or any of the improvements thereon; that in October of 1952 the plaintiff, for the first time, informed the defendant that she claimed title to this strip, and that she commenced the present action on January 30, 1956.

As conclusions of law from these facts the court found that the plaintiff's action was barred by the provisions of section 318 and of subdivision 2 of section 338 of the Code of Civil Procedure, and by laches and lack of due diligence of the plaintiff and her predecessor in interest; that the defendant was entitled to judgment that the plaintiff and all persons claiming under her be enjoined from asserting any claim adverse to the defendant or to the disputed strip, together with the defendant's costs of suit, and that judgment should be entered quieting the defendant's title in the strip. The legal description of the strip is set forth in Conclusion IV.

In this state a quiet title action may be brought by a party not in possession (Code Civ. Proc., § 380) against another who claims an estate or interest in property adverse to him (Code Civ. Proc., § 738). Section 318 of the Code of Civil Procedure provides that "No action for the recovery of real property, or for the recovery of possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seised or possessed of the property in question, within five years before the commencement of the action." ■ The plaintiff may recover only upon the strength of his or her own title, however, and not upon the weakness of the defendant's title. ■ Where the plaintiff relies on a paper title alone he must trace his title (1) to the government; or (2) to a grantor in possession at the time of the conveyance to the plaintiff; or (3) to a source common to the chains of title of plaintiff and defendant. (*Helvey* v. *Sax,* 38 Cal.2d 21, 24 [237 P.2d 269]; *Rockey* v. *Vieux,* 179 Cal. 681, 682 [178 P. 712].) The burden of proof is upon the plaintiff. (*Akley* v. *Bassett,* 189 Cal. 625, 646 [209 P. 576]; *Haney* v. *Kinevan,* 73 Cal.App.2d 343, 344 [166 P.2d 361].)

The plaintiff did not offer evidence to establish a prima facie case on any of these alternatives or to overcome the bar of the statute of limitations contained in section 318 of the Code of Civil Procedure. No evidence was offered to deraign her

title from the government or to show that any common grantor appeared in the chain of title of herself and the defendant. What title the plaintiff's grantor had or how she acquired it does not appear, and no proof was offered that she or her grantor ever had possession. ■ The mere introduction of the deed from her immediate grantor was not sufficient to establish a prima facie case. (*Coffin* v. *Odd Fellows Hall Assn.*, 9 Cal.2d 521, 525 [71 P.2d 266]; *San Diego Improvement Co.* v. *Brodie*, 215 Cal. 97, 100 [8 P.2d 1027].) ■ The plaintiff, therefore, failed to prove either legal title or actual possession and judgment was properly entered denying her any relief.

Now as to the sufficiency of the record in support of the judgment quieting the title in the defendant and enjoining the plaintiff from asserting any interest therein. It is true that the judgment for the defendant cannot be supported on any theory of title by adverse possession because of the affirmative showing and finding of payment of taxes by the plaintiff since the acquisition of her deed. ■ The payment of taxes on the part of a claimant is a necessary prerequisite in establishing a title by adverse possession. The trial court found that no taxes had been levied or assessed upon any easement in the disputed strip, but it made no finding that the defendant had acquired a prescriptive easement. While such a finding could have been made it would not support the judgment quieting the title in the defendant in fee.

The answer pleaded the defendant's ownership of the disputed strip, and also pleaded title by agreed boundary. Although no specific finding was made on this issue of the defendant's title, all of the essential elements necessary to sustain such a finding and judgment appear in the record. ■ The requirements of proof necessary to establish a title by agreed boundary are well settled by the decisions in this state. (*Mello* v. *Weaver*, 36 Cal.2d 456, 459 [224 P.2d 691]; *Hannah* v. *Pogue*, 23 Cal.2d 849, 856-857 [147 P.2d 572]; *Martin* v. *Lopes*, 28 Cal.2d 618, 622-627 [170 P.2d 881]; *Young* v. *Blakeman*, 153 Cal. 477, 481-483 [95 P. 888]; see also 4 Cal.L.Rev. 179; 14 Cal.L.Rev. 138; 56 Mich.L.Rev. 487 et seq.) The doctrine requires that there be an uncertainty as to the true boundary line, an agreement between the coterminous owners fixing the line, and acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations or under such circumstances that substantial loss would be caused by a change of its position. ■ It is not required that the true location be absolutely

unascertainable (*Price* v. *De Reyes,* 161 Cal. 484, 489 [119 P. 893]) ; that an accurate survey from the calls in the deed is possible (*Silva* v. *Azevedo,* 178 Cal. 495, 498 [173 P. 929]), or that the uncertainty should appear from the deeds (*Mello* v. *Weaver, supra,* 36 Cal.2d 456, 460). The line may be founded on a mistake. (*Nusbickel* v. *Stevens Ranch Co.,* 187 Cal. 15, 19 [200 P. 651].)

█ The court may infer that there was an agreement between the coterminous owners ensuing from uncertainty or a dispute, from the long-standing acceptance of a fence as a boundary between their lands. (*Hannah* v. *Pogue, supra,* 23 Cal.2d 849, 856 and cases cited.) █ The evidence shows that the St. Matthew's Evangelical Church caused a survey to be made at the time it purchased the property in 1925; that the improvements consisted not merely of fences, which might in and of themselves be of an uncertain, temporary or equivocal nature, but were substantial structures such as a cement walkway with a fence solidly embedded therein and a building with a concrete foundation; that no objection to the erection or maintenance of these structures was made by the adjoining owner for 26 years; that during all of that time no one asserted any adverse claim to the strip; that from 1942, when she bought the adjoining property, until 1952, a period of 10 years, the plaintiff made no objection to the open, visible, notorious and peaceable use of the property by the defendants, and that she then waited almost four years longer before bringing this action. It may be inferred that there was an uncertainty as to the true line at the time the structures were erected, which uncertainty was settled by practical location on the ground at that time and was agreed to by the then coterminous owners. It may also be inferred that the uncertainty arose after the improvements were constructed and that the coterminous owners, by acceptance and acquiescence, agreed that the easterly boundary of these structures constituted the true boundary line between their properties. There is no evidence that the defendant's predecessor did not act in good faith. The acquiescence of the adjoining owner continued for a period longer than the statute of limitations and also under such circumstances that substantial loss would be caused to the defendant by a change of position of the boundary line.

█ Under the foregoing circumstances the line so agreed upon became in legal effect the true line. In *Young* v. *Blakeman, supra,* 153 Cal. 477, 482, it was said: "It is stated by the authorities that the line so agreed on becomes in legal effect

the true line, that the agreement as to the line may be in parol and that it does not operate to convey title to the land which may lie between the agreed line and the true line, but that it fixes the line itself and the description carries title up to the agreed line, regardless of its accuracy . . . that 'the division line when thus established, attaches itself to the deeds of the respective parties, and simply defines, not adds to, the lands described in each deed,' and that if more is thus given to one than the calls of his deed actually requires, he 'holds the excess by the same tenure that he holds the main body of his lands.' '' Each coterminous owner is deemed to have paid the taxes according to his deed. (*Price* v. *De Reyes, supra*, 161 Cal. 484, 489-490; *Caballero* v. *Balamotis*, 144 Cal. App.2d 58, 61-62 [300 P.2d 363] ; *Carr* v. *Schomberg*, 104 Cal. App.2d 850, 860 [232 P.2d 597].) It is therefore not material to the defendant's claim of title by agreed boundary that the plaintiff paid the taxes assessed upon the land according to her deed.

The equities are in favor of the defendant and the litigation should be terminated. The question of the defendant's title was in issue and the answer prayed for "such other and further relief as is meet and just in the premises." A general finding of ownership is a finding of ultimate fact. (*Daly* v. *Sorocco*, 80 Cal. 367 [22 P. 211] ; 41 Cal.Jur.2d Quieting Title, § 82; 24 Cal.Jur. Trial, § 207.) This court has the power to make such a finding on the evidence pursuant to section 956a of the Code of Civil Procedure. This court therefore makes the following finding : that title to the strip of land described in Finding III is in the defendant.

It is not necessary to pass upon the other contentions raised on this appeal.

On the findings and conclusions of law made by the trial court and the additional finding herein made, the judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., and Spence, J., concurred.

McCOMB, J.—I dissent. I would reverse the judgment for the reasons stated by Mr. Presiding Justice Kaufman in the opinion prepared by him for the District Court of Appeal in *Ernie* v. *Trinity Lutheran Church* (Cal.App.), 327 P.2d 145.

Schauer, J., concurred.