[Civ. No. 9858. Third Dist. Mar. 7, 1961.]

FRANCES I. ROSE, Appellant, v. MANUEL F. SILVA et al., Respondents.

C. Ray Robinson, James A. Cobey and Charles E. Goff for Appellant.

Landram, Silveira, Garrett & Goul, H. K. Landrum, Preston, Braucht & George and V. G. Preston for Respondents.

SCHOTTKY, J.—Frances I. Rose has appealed from a judgment in favor of Manuel F. Silva, Rita Ann Silva and Valley Aggregates, Inc., a California corporation, in an action brought by Mrs. Rose to establish her title to certain land claimed by the Silvas.

Appellant contends that the judgment must be reversed because the evidence is insufficient to support the trial court's findings of fact, conclusions of law or the judgment.

In 1943 Frances Rose and her husband and C. R. Shaffer and his wife purchased a ranch lying along the south bank of the Merced River.

In 1944 the Silvas purchased a ranch lying north of the Rose-Shaffer ranch. The deed to the Rose property declared that the northern boundary of record was the "United States Government Meander Line" of the former course of the Merced River. (The Rose-Shaffer ranch was later partitioned and this action by Mrs. Rose is only concerned with the property she claims belongs to her.) Some time between 1857 and 1914 the Merced River altered its course. The new course ran south of the meander line, and if the description in the Rose deed were the boundary, it would include a gravel deposit which had been leased to Valley Aggregates by the Silvas.

The following summary of the evidence in the memorandum opinion of the trial court is amply sustained by the record:

"The evidence in this case discloses that the parcels of land involved in this controversy are situated in Merced County, and are bordered by the Merced River. It is the contention of the defendants that for more than 60 years, the river was the boundary line between the lands lying on the north, and on the south side of the river. Evidence was introduced to the effect that both the plaintiff's and the defendants' predecessors in interest always considered the river as the actual boundary between their properties. It was further testified to without contradiction, that a conversation held between Charles Shaffer, who formerly owned this property, with the present plaintiff, and the defendant Manuel Silva, that the boundary line dividing their property was the center line of the Merced River, where it was adjacent to their property. This conversation came about because cattle belonging both to the defendant Silva and to Charles Shaffer frequently crossed the river, and entered the property of the other. Both parties then built fences, one on the north side of the river, and the other on the south side of the river, to retain the cattle on the respective property. The testimony which is uncontradicted was to the effect that the location thus chosen was practical, and that it would be impossible to build the fence along the center line of the Merced River where all parties claimed their property line to be. . . .

"On June 19, 1950, S. Leonard, who was formerly a defendant in this case, and against whom this action has been dismissed, entered into a lease agreement with the defendant Manuel F. Silva and Rita Silva for the purpose of erecting a rock and gravel quarry on the property located on the north side of Merced River. In order to remove any gravel from said quarry, it was necessary for S. Leonard to secure permission from the Rose-Shaffer people to use their lands for road purposes so that the gravel could be taken from the quarry. This also necessitated building a bridge across the Merced River from the north side, upon which the quarry was to be erected, to the south side of the Merced River, and on the property of Shaffer and Rose. Such a written agreement was entered into on August 11, 1950 between Leonard and the plaintiff, together with the Shaffers. In this agreement, set out in paragraph three, appears the following language: 'It is understood that second party is the owner, or has the right to excavate for and remove sand and gravel upon and

from the property on the Merced River owned by Manuel F. Silva, known as the Manuel Silva Ranch.' Under this agreement, Leonard was to construct a new private road along a course selected by the parties from a point at or near the existing gate on the existing private road to the nearest point on the Merced River, said road to be graded, graveled, and oiled, and thereafter maintained by Leonard in good condition. Leonard failed to construct this road in accordance with the agreement, and as a result thereof, the plaintiff and Shaffer filed suit in this Court in action number 20599 to compel Leonard to perform his agreements under the contract. The complaint filed in that action sets out in haec verba the entire agreement between the parties, and sets forth the quotation hereinabove contained to the effect that the property on which the quarry is being built, or to be built, is owned by people other than the plaintiffs. The testimony adduced discloses that both Charles Shaffer and Mrs. Rose knew of the proposed location for the quarry. Mrs. Rose testified that from the beginning of the operation of the quarry, and even before the partition of the property between herself and Shaffer, she knew that the sand and gravel was coming from the north side of the river. Mrs. Rose further testified that she had never used any of the property north of the river, and that up to the time of the partition, had no idea that her land went across the river. She further stated that the river was the boundary between her property and that of Silva. She testified that they had used the south portion of this property while Silva had used all the land north of the river, and that she considered the river as the boundary until a few months after the partition.

"In this connection, it might be well to state that she testified that in August of 1955 she contacted her attorney in connection with this matter. No action, however, was taken concerning the filing of a suit at that time, and the present suit was filed on April 26, 1957, which was three weeks after the death of Charles Shaffer. Prior to the filing of this suit, the plaintiff never made any claim, either verbally or in writing, to the defendant Silva concerning this property. There has been no denial in this case, as to the conversation between Shaffer and Silva concerning the boundary line being in the center of the river, a point upon which they both agreed, and during the time that Charles Shaffer was the managing agent of this property. Both Shaffer and Mrs. Rose knew of the operations of this quarry at all times. Permission was

granted by them to anchor cables to trees on the property on the south side of the river. Both Shaffer and Mrs. Rose were present while the road was being built, and during all of this time Shaffer was explaining to Mrs. Rose all about the road. There is no contradiction of this testimony. There is also no contradiction that farming operations by Rose or Shaffer were ever conducted on the north side of the river, or that anyone at any time interfered with any operations by Silva on the north side of the river. The cost of building the road was in excess of $19,000.00.

''The testimony of Walter Magnuson, and Frank Campodonica is to the effect that for the past 60 years everyone used the river as a boundary line for their property. The testimony of Leonard concerning his conversation with Anthony Rose, the son of the plaintiff, in the spring of 1955, is uncontradicted in the record. Anthony Rose was not called as a witness in this case, although he was available at all times.''

The court made the following finding of fact:

''12. That many years prior to the filing of the complaint herein the predecessors in interest in the lands herein found to belong to Manuel F. Silva and Rita Ann Silva and of the lands herein found to belong to plaintiff Frances I. Rose became and were uncertain as to the true boundary of and between their respective properties; that thereupon and by reason of such uncertainty the predecessors of said parties agreed that the boundary between their respective lands should be and was the center line of the Merced River as it flowed between said parcels of land; that thereupon and thereafter pursuant to said agreement said predecessors and their respective successors for a period of more than 60 years and up to the present time used and occupied and acquiesced in said use and occupation of their respective parcels of land with respect to and in accordance with said agreed boundary and each paid all taxes levied and assessed or payable upon his or her lands and each respectively claimed to own and possess his or her land under claim of right and adverse to any and all other persons.''

Appellant makes a vigorous attack on the above finding contending that ''there was insufficient evidence that the parties' predecessors in interest had established a boundary by agreement.'' We do not agree with this contention.

In the recent case of *Ernie* v. *Trinity Lutheran Church,* 51 Cal.2d 702, the court said at page 707 [336 P.2d 525]:

"The requirements of proof necessary to establish a title by agreed boundary are well settled by the decisions in this state. (*Mello* v. *Weaver,* 36 Cal.2d 456, 459 [224 P.2d 691] ; *Hannah* v. *Pogue,* 23 Cal.2d 849, 856-857 [147 P.2d 572] ; *Martin* v. *Lopes,* 28 Cal.2d 618, 622-627 [170 P.2d 881] ; *Young* v. *Blakeman,* 153 Cal. 477, 481-483 [95 P. 888] ; see also 4 Cal. L. Rev. 179 ; 14 Cal. L. Rev. 138 ; 56 Mich. L. Rev. 487 et seq.) The doctrine requires that there be an uncertainty as to the true boundary line, an agreement between the coterminous owners fixing the line, and acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations or under such circumstances that substantial loss would be caused by a change of its position. ■ It is not required that the true location be absolutely unascertainable (*Price* v. *De Reyes,* 161 Cal. 484, 489 [119 P. 893]) ; that an accurate survey from the calls in the deed is possible (*Silva* v. *Azevedo,* 178 Cal. 495, 498 [173 P. 929]), or that the uncertainty should appear from the deeds (*Mello* v. *Weaver, supra,* 36 Cal.2d 456, 460). The line may be founded on a mistake. (*Nusbickel* v. *Stevens Ranch Co.,* 187 Cal. 15, 19 [200 P. 651].)

■ "The court may infer that there was an agreement between the coterminous owners ensuing from uncertainty or a dispute, from the long-standing acceptance of a fence as a boundary between their lands. (*Hannah* v. *Pogue, supra,* 23 Cal.2d 849, 856 and cases cited.) . . .

■ ". . . In *Young* v. *Blakeman, supra,* 153 Cal. 477, 482, it was said: 'It is stated by the authorities that the line so agreed on becomes in legal effect the true line, that the agreement as to the line may be in parol and that it does not operate to convey title to the land which may lie between the agreed line and the true line, but that it fixes the line itself and the description carries title up to the agreed line, regardless of its accuracy . . . that "the division line when thus established, attaches itself to the deeds of the respective parties, and simply defines, not adds to, the lands described in each deed," and that if more is thus given to one than the calls of his deed actually requires, he "holds the excess by the same tenure that he holds the main body of his lands."' Each coterminous owner is deemed to have paid the taxes according to his deed. (*Price* v. *De Reyes, supra,* 161 Cal. 484, 489-490 ; *Caballero* v. *Balamotis,* 144 Cal.App.2d 58, 61-62 [300 P.2d 363] ; *Carr* v. *Schomberg,* 104 Cal.App.2d 850, 860 [232 P.2d 597].) It is therefore not material to the defendant's claim of title by

agreed boundary that the plaintiff paid the taxes assessed upon the land according to her deed.''

In *Martin* v. *Lopes*, 28 Cal.2d 618 [170 P.2d 881], the court said at page 622:

''The case of *Sneed* v. *Osborn, supra* (25 Cal. 619, 627), laid down the rule in this state in accordance with what was said to be abundantly supported by the authorities, that when owners of adjoining lands have acquiesced for a considerable time, at least equal to the period prescribed by the statute of limitations, in the location of a division line between their lands, although it may not be the true line according to the calls of their deeds, they are thereafter precluded from saying it is not the true line.'' (See also *Hannah* v. *Pogue*, 23 Cal.2d 849, 856 [147 P.2d 572].)

There is no requirement that the boundary must be physically marked on the surface of the ground. The test is whether the parties have agreed upon a line that is clear to them and can be made clear to others (*Carr* v. *Schomberg*, 104 Cal.App.2d 850, 859 [232 P.2d 597].) Once it is found that the parties have agreed upon a boundary the payment of taxes according to the deed's description amounts to the payment of taxes up to the agreed boundary. (*Carr* v. *Schomberg, supra*.)

In view of the foregoing authorities and the evidence as hereinbefore set forth, we are convinced that the trial court correctly found that there was an agreed boundary between the ranches of appellant and respondent. No other points raised require discussion.

The judgment quieting respondents' title is affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

A petition for a rehearing was denied March 30, 1961, and appellant's petition for a hearing by the Supreme Court was denied May 3, 1961.

---

*Assigned by Chairman of Judicial Council.