THOMAS LYNCH, APPELLEE, REVIVED IN THE NAME OF HELEN LYNCH, ADMINISTRATRIX OF THE ESTATE OF THOMAS LYNCH, ET AL., V. DANIEL EGAN, APPELLANT.

FILED FEBRUARY 4, 1903.  No. 12,167.

Commissioner's opinion, Department No. 3.

1. **Evidence.**  Evidence examined, and *held* sufficient to sustain the findings of the trial court.

2. **Fact Omitted from Finding.**  In a suit in equity, where the court makes special findings, and omits therefrom some fact, conclusively established by the evidence essential to the decree, such fact, on appeal to this court, will be treated as though found by the court.

3. **Boundary Line.**  Where the true boundary line between adjoining owners is uncertain and unknown to them, and may be ascertained only at more or less trouble and expense, an executed agreement to accept and abide by a certain line as such

Syllabus by court; catch-words by editor.

boundary, is binding upon the parties and subsequent purchasers having notice thereof, although the boundary agreed upon may not be the true line.

4. **Trespasser: Fence.** The destruction of a fence by a trespasser, and his threat to repeat such act as often as the fence should be replaced, entitles the owner of the premises invaded to an injunction against the trespasser, even though the latter may not be insolvent.

APPEAL from the district court for Grant county. Case stated in opinion. Heard below before Sullivan, J. Judgment for plaintiff. *Affirmed.*

*Lester E. Kirkpatrick* and *William H. Thompson,* for appellant.

*Constantine J. Smyth* and *Ed P. Smith, contra.*

ALBERT, C.

This action was brought by Thomas Lynch against Daniel Egan to restrain the latter from breaking down a division fence between their lands, and from repeated trespasses on the property of the plaintiff. A trial was had, and the court found as follows:

"1. That the plaintiff, Lynch, was at the commencement of this suit the owner of the east half of the northwest quarter and the west half of the northeast quarter of section 8, township 22, range 37 north, according to the government survey of 1876, and the defendant was then the owner of east one-half of the northeast one-fourth of section 8 and the west one-half of the northwest one-fourth of section 9, town and range aforesaid.

"2. That the strip of land in dispute in this action is described as follows, that is to say: Commencing at the closing corner on the east boundary of the Light homestead and the north boundary of the Pratt homestead, running thence south naught degrees and twenty-seven minutes west along the east boundary of the Light homestead, as surveyed by the United States government surveyor

Alt, thirty-two chains and forty-three links to the southeast corner of the Light homestead, as shown to said Alt by Mr. Lynch; thence west along the south boundary of the Light homestead, as shown by Mr. Lynch, five chains and fifty-three links to the closing corner established on the west boundary of the Pratt homestead and the south boundary of the Light homestead; thence north along the west boundary of the Pratt homestead thirty-two chains eleven links to the northwest corner; thence north eighty-six degrees forty-four minutes east along the north boundary of the Pratt homestead, five chains and seventy-eight links to the place of beginning. The court finds that the monuments or stakes or corners and all evidence of the survey of 1876 were, at the time of the settlement and entry made upon the lands mentioned in the petition and answer, obliterated and lost.

"3. The court further finds that one Light made homestead entry on the land mentioned in the petition in 1888, and made final proof thereto on August 9, 1892.

"4. That one Pratt made entry on the quarter adjoining this on the east mentioned in the pleadings on September 24, 1890, and made final proof in support of his entry October 12, 1896.

"5. That sometime in the year 1892 or 1893 the county surveyor of Grant county was requested by the claimant Light to make a survey of the east line of his homestead; that the county surveyor made such survey and located corners along the east line of the same.

"6. That the survey made by the county surveyor was incorrect and was not the line originally established by the government surveyors.

"7. That after said survey was made and marked the original claimants, Light and Pratt, entered into an agreement that this should be the true line between their respective tracts, and thereafter, in the latter part of 1893, or the spring of 1894, a fence was built along said survey by the said Pratt and Light; that the man Light enclosed within this fence that part of the hay land situated

upon his entry lying immediately west of said fence and that Pratt also enclosed within the fence by other fences the hay land upon his land lying immediately east of the first-named fence.

"8. That in March, 1897, the plaintiff purchased from Light the land included in his said entry; that shortly thereafter defendant Egan purchased from Pratt the land included in his entry.

"9. That from the date of said entries continuously up to the time of the said purchases both of the purchasers had lived in the vicinity of said land and knew of the existence of said division fence and knew that the then respective owners were mutually recognizing the same as the division fence between their respective tracts.

"10. That the plaintiff went into the possession of the land purchased by him from Light immediately after said purchase and [was] in the possession thereof at the commencement of this suit; that while he has never attempted to exercise control or dominion over any of the land lying east of the fence he has been ready and willing at all times to claim land lying east of it.

"11. That the defendant, as soon as he had purchased the land from Pratt, or shortly thereafter, asserted and claimed that the fence was not upon the true line and insisted that the strip of land in dispute was part of his tract.

"12. That without the knowledge of the plaintiff the defendant in 1897 went on to the strip of land in dispute and cut and stacked the hay thereon and afterward hauled it across the division fence and fed it to his stock; and in 1898 he again, without the knowledge or consent of the plaintiff, and before the plaintiff could himself cut the hay, went upon the said strip and began cutting the hay, when he was enjoined by the plaintiff.

"13. That plaintiff from the time he purchased said land from Light cut the hay thereon, on the land not in dispute between the parties, and then fed it out during the winter season to his stock, and his cattle have been

accustomed to run upon the inclosure formed by the division fence with the other fences connected with it.

"14. That the defendant has not had the continuous possession of said strip of land, but that from time to time and at various times early in the haying season he went upon the said strip of land and cut the hay and removed it and fed it to stock upon land lying east of the fence.

"15. That during the said period the defendant took down the said fence, at various places, that he might go in to cut the hay and remove the same, and plaintiff from time to time replaced the fence.

"16. That at the time this suit was instituted the defendant threatened to continue tearing down the fence and cutting and removing the hay from said strip, and intended to do so, and intended to do so against the will and consent and in spite of the protestations of the plaintiff.

"As a matter of law the court concludes from the foregoing findings of fact that the plaintiff and defendant are bound to accept the division line agreed upon between their grantors, Light and Pratt, that is to say the line describing the east boundary of the tract of land in dispute as heretofore found as the true boundary line between their respective tracts of land as heretofore described; that the plaintiff is entitled to the peaceable and undisputed possession of the strip of land in dispute and to the crops growing thereon; and that the defendant be perpetually enjoined from interfering with the plaintiff's possession and occupancy of the said strip of land, and from removing the crops therefrom or in any way interfering with the same."

On the foregoing findings a decree was rendered for the plaintiff, from which the defendant appeals to this court.

Complaint is made that some of the findings essential to the decree are not sustained by sufficient evidence. We have gone over the evidence with some care with respect to each finding complained of and are satisfied that it is sufficient.

41

The question then arises whether the facts found by the court are sufficient to sustain the decree. The appellant contends they are not. In this behalf it is first urged that the agreement between the respective grantors of the parties, found by the court, is not binding, for the reason that it does not appear from the findings that the dividing line between such grantors was so indefinite and uncertain that it could not be ascertained from their patents. In support of this contention he invokes the rule laid down in *Trussel v. Lewis,* 13 Nebr., 415, 42 Am. Rep., 767, to the effect that where the true line can be ascertained, and parties by mistake agree upon an erroneous line as their boundary, believing it to be the true line, they will not be concluded by such agreement from claiming the true line when discovered, unless the statute of limitation has run, or equitable reasons exist for establishing the erroneous line. The only finding of the court on the question of the possibility of ascertaining the true line, is that the monuments and all evidence of the survey of 1876 at the time of the settlement and entry made on the land mentioned in the petition and answer, were obliterated and lost. By reference to the record, the survey referred to in the findings just mentioned was a government survey, under which the entry of the lands was made. The finding, as it stands, is certainly not sufficient to show that at the time the survey was made by the county surveyor in 1892, upon which the agreement mentioned in the seventh finding was based, the true line between the parties could not have been ascertained. But we do not understand the rule to be that in order that an agreement of that kind should be binding, the true line should be absolutely unascertainable. Another rule announced in *Trussel v. Lewis, supra,* is that where the line is ambiguous and uncertain, if the parties agree upon a line and mutually enter upon the occupancy of their lands in conformity thereto and make improvements thereon, they are concluded by such agreement. As to the rule first stated, it is simply a reiteration of the principle that a

contract founded on mistake is not binding.  But in this case there is no evidence of mistake.  The true division line between the owners of the two tracts of land was unknown to them and uncertain.  If ascertainable at all, it could only be ascertained at considerable trouble and expense.  Under such circumstances, we think it was competent for the parties to agree upon a division line, and that such agreement, when acted upon and fully executed, as in this case, would be binding upon them, even though the true line should afterward be ascertained.  The agreement involved no mistake.  When it was made both parties knew that the true line was uncertain, and that the line upon which they agreed might or might not be the true line; but they accepted it, right or wrong, rather than to take further steps to ascertain the true line.  We know of no reason why a different rule should apply to a contract of that kind than to any other.  It was an agreement between parties competent to contract, supported by a sufficient consideration.  Its complete execution removes it from the operation of the statute of frauds.  So far as we are able to see, it lacks none of the elements of a valid contract.  The findings of the court are not as specific on this point as they might have been.  But the evidence is uncontradicted that at the time the survey upon which the agreement in question is based was made, the parties affected thereby were ignorant of the true line. That being true, when the case is presented to this court on appeal, it should be treated as one of the established facts in the case, if necessary to uphold the decree.

The ninth finding shows that both parties to this suit, at the time they obtained their respective titles, had full knowledge of the division fence that had been placed by their grantors on the line agreed upon by their grantors, and that such grantors recognized that as the true line. Such facts, if not sufficient in themselves, suggested inquiries which, if pursued with diligence, would have led the appellant to a knowledge of the agreement concerning the line.  That being true, he is chargeable with notice of

such agreement, and is as effectually bound thereby as his grantor, who was a party to it.

The appellant insists that the plaintiff's remedy was at law, and not in equity. The proposition is not argued at length, nor do we think it can be maintained successfully in the face of the decisions of this court. The findings, we think, are ample to bring the case within the rule laid down in *Pohlman v. Evangelical Lutheran Trinity Church,* 60 Nebr., 364, to the effect that the destruction of a fence, and the threatened repetition thereof by the trespasser as often as the fence should be replaced, entitled the owner to relief by injunction against the invader, even though the latter may not be insolvent.

We recommend that the decree of the district court be affirmed.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.