No. 12,979.

SOBOL *v.* GULINSON.
(28 P. [2d] 810)

Decided December 22, 1933.

Messrs. GARWOOD & GARWOOD, Mr. GEORGE O. MARRS, for plaintiff in error.

Mr. RALPH J. CUMMINGS, Mr. IRA L. QUIAT, for defendant in error.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

IN an ejectment suit brought by Ella Sobol against Cassell Gulinson, the court rendered judgment for the defendant. The plaintiff seeks a reversal of the judgment.

In 1909 or earlier Gulinson bought lot 9 in block 20, Platte Park, in Denver. On it was a frame house. Apparently dividing that lot and lot 8 there were two line

fences, referred to as "double fences," which stood back to back. When Gulinson purchased lot 9 one Charwick, who owned lot 8, told Gulinson that lot 9 extended to the line of the two fences between the two lots. Gulinson took physical possession of lot 9, and occupied it up to that line. He lived there part of the time and rented to others part of the time. Charwick occupied lot 8 up to the agreed line. In 1912, the frame house having been destroyed by fire, Gulinson decided to erect a brick building on his lot. He found that in order to have the true boundary line between the lots determined by a survey it would be necessary to have the surveyor run a line all the way from Federal boulevard to the Platte river, a considerable distance. He explained the situation to one Devinsky, who then owned lot 8, and asked if he would bear part of the expense of a survey. Devinsky would not share the expense of a survey. He asked, "Why go to work and spend so much money for a re-survey?" He told Gulinson that the line of the fences would be their boundary line; that Gulinson should tear down the fences and build there. Gulinson offered to replace Devinsky's fence after the building was completed, but Devinsky said he didn't want the rotten fence; that he would use the wall of the building as his fence. Agreeing to such designation of a boundary line, Gulinson constructed his brick building on the line of his fence and Devinsky used the wall as his fence. That building has been there ever since. A short time after the erection of the building one Cohen, who had acquired lot 8, told Gulinson that the building was a little over on lot 8, but apparently acquiesced in the situation and made no attempt to oust Gulinson. Ever since the erection of the building the location of the wall was acquiesced in by the owners of lot 8 until Mrs. Sobol acquired title thereto in 1929. After acquiring title she claimed that the wall of the building was on her lot to the extent of about 8 inches, and promptly sued to compel Gulinson to remove the wall therefrom.

The parties stipulated that if the court should find for

Mrs. Sobol, the decree should provide for a survey by the city engineer, and that within a reasonable time to be fixed by the court Gulinson should remove so much of his building as should be found by the survey to be on lot 8.

■ We approve the following statement of the law found in the note in 69 A. L. R. at page 1433: "It is a well-settled principle of law that a boundary line may, under certain circumstances, be permanently and irrevocably established by parol agreement of adjoining owners. When there is a doubt or uncertainty, or a dispute has arisen, as to the true location of a boundary line, the adjoining owners may by parol agreement establish a division line; and, where the agreement is executed and actual possession is taken under such agreement, it is conclusive against the owners and those claiming under them."

There was doubt and uncertainty as to the true location of the boundary line between lots 8 and 9 when, in 1909 or earlier, Gulinson and Charwick agreed upon the line of the two fences as a boundary line, and when, in 1912, Gulinson and Devinsky adopted the same line as a boundary line. Indeed, the fact that the parties made the stipulation referred to above indicates that such doubt and uncertainty exist even at the present time.

The fact that the boundary line could have been ascertained by having a survey made does not, in view of the situation presented by the record, prevent there being an uncertainty, within the meaning of the rule. To bring a case within the rule it is not necessary that the true line should be absolutely unascertainable. In *Lynch v. Egan,* 67 Neb. 541, 93 N. W. 775, the court said: "The true division line between the owners of the two tracts of land was unknown to them and uncertain. If ascertainable at all, it could only be ascertained at considerable trouble and expense. Under such circumstances, we think it was competent for the parties to agree upon a division line, and that such agreement, when acted upon and fully executed, as in this case, would be binding upon

them, even though the true line should afterward be ascertained." To the same effect, see: *Price v. De Reyes,* 161 Cal. 484, 119 Pac. 893; *Wood v. Bapp,* 41 S. D. 195, 169 N. W. 518; *Nusbickel v. Stevens Ranch Co.,* 187 Cal. 15, 200 Pac. 651.

Referring to amicable settlements of boundaries, the court, in *MacArthur v. Henry,* 35 Tex. 801, 816, made this pertinent observation: "These settlements of disputed, conflicting, or doubtful boundaries should be encouraged by the courts as a means of suppressing spiteful and vexatious litigation, and thus banishing from peaceful communities a fruitful source of discord, 'Convenience, policy, necessity, justice—all unite in sustaining such an amicable agreement.' "

The district court made no mistake in upholding the boundary settlement in this case.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HOLLAND concur.