No. 13,652.

EISELE *v.* BARNHART.
(55 P. [2d] 321)

Decided February 24, 1936.

Mr. MARTIN C. MOLHOLM, for plaintiff in error.

Mr. SIMON QUIAT, Mr. SAMUEL S. GINSBERG, Mr. NATHAN H. CREAMER, for defendant in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

ANNA Barnhart brought this action against Wilbert E. Eisele in the district court to determine the rights of the parties in a strip of land in a certain block in Lakewood, Jefferson county, the action resulting in a judgment in her favor. The parties will be herein designated by name or as plaintiff and defendant.

In February, 1927, defendant came to plaintiff to inquire about a house belonging to her, known as 1315 Lamar street, on which she had placed a "For Sale" sign. Mrs. Barnhart at that time owned the entire block in which the house was situated, except an acre on the north side of the block that had been sold to one Brinker by Mrs. Barnhart's husband, prior to his death. After defendant had examined the property, a contract was entered into, bearing date of February 21, 1927, in which plaintiff agreed to sell, and defendant agreed to purchase, for $3,900 the following described property: The south one acre of block numbered eighteen (18), Lakewood, Jefferson county, known as 1315 Lamar St., together with one inch (1″) of water from the Rocky Mountain Ditch Company; that is, the right to purchase one inch of water per annum from said company, together with all improvements thereon, in the county of Jefferson, state of Colorado.

Three days later, a surveyor employed by Mrs. Barnhart set stakes by which he fixed the north boundary line of Eisele's property 97.5 feet from the southern boundary of the block, which would have given Eisele .6 of an acre. He later, on March 7, 1927, made a second survey by which he fixed Eisele's north boundary line, giving him a frontage on Lamar street of 133.62 feet making the area of his tract .82 acres. Both the surveyor and Mrs. Barnhart testified that Eisele was present on the occasion of the second survey and that when the north line was located with two four-by-four stakes, Eisele expressed himself satisfied with its location. Mrs. Barn-

hart further testified that defendant said that the line as so located gave him abundant room for a driveway and for his buildings.

Toner, the surveyor, testified that he was not instructed by Mrs. Barnhart to lay off an acre, but that subsequent to the first survey in which he located the line approximately twelve feet north of Eisele's house, he was called by Mrs. Barnhart who told him that she would have to give Mr. Eisele more ground. Mrs. Barnhart says that she did not instruct him to lay off an acre, but to lay off sufficient to give room for a driveway and for ingress to and egress from the buildings on the Eisele tract, and in this she is corroborated by Toner.

Eisele says that the second line as located was a matter of fifteen feet south of where, by stepping it, he had estimated the north line of his acre tract would be; that he asked Toner and Mrs. Barnhart if the line as surveyed gave him an acre and was assured by them that it did so. Both denied making any such statement or giving him any such assurance. The deed to the property was not delivered by Mrs. Barnhart to Eisele until November 14, 1927. The description therein was "the south one acre (S 1 a) of block numbered Eighteen (18) Lakewood." The water mentioned in the contract was not described in the deed. Eisele testified that the contract and deed were drawn at the American National Bank under instructions from Mrs. Barnhart, and that the bank acted as her agent, but Mrs. Barnhart denied this and testified that the contract and deed were drawn by the bank under instructions from Mr. Eisele and that the bank acted as his agent. She also testified that she expressed a desire to have the papers examined by her attorney, but was told by Eisele that it was unnecessary.

On July 11, 1927, Eisele was ready to make payment under the contract in full, but Mrs. Barnhart required some additional time to correct an error in the title and in order that Eisele might not be in default on his payments of $50 a month, which he was obligated to pay

under the terms of the first contract, a second contract, drawn by Mrs. Barnhart's attorney, was executed by the parties, relieving Eisele from such payments until the title was corrected, in which contract it was recited: "That Whereas, on or about the 21st day of February, A. D. 1927, the said Anna Barnhart entered into a contract whereby she agreed to sell, and the party of the second part agreed to purchase the South One (1) acre of Block 18, Lakewood, excepting therefrom public roads, highways, ditches and reservoir filings, for the sum of thirty-nine hundred dollars ($3900.00)," etc. The testimony of Toner, the surveyor, was to the effect that the property as described in this memorandum of agreement, including to the center of the roads or streets, contained 1.03 acres. October 3, 1927, one month and eleven days before the deed was delivered, Mrs. Barnhart began the construction of a dwelling house on the tract north of the line established by Toner as the north line of Eisele's property, the construction work on said dwelling house being continued until it was completed early in the spring of 1928. The cost of this improvement was $3,500.

Eisele moved into the property at 1315 Lamar St. immediately after the execution of the first contract in February, 1927, and continued to reside there to the time of the trial. Shortly after the line was located giving him the 133.62 foot frontage he built a permanent fence along such north line.

In January, 1933, almost six years after the completion of the transaction, Mrs. Barnhart, on attempting to make a sale of the new dwelling house that she had constructed, learned that the description in the first contract, and the deed which she had given to Eisele conveying him one acre, gave him an amount of ground such that his northern line would extend approximately thirty feet north of the line upon which he had constructed his fence, and that such line would pass directly through the house which she had built. She attempted unsuc-

cessfully to secure a quitclaim deed to this thirty-foot strip of ground from Eisele. Upon learning that she sought such a deed from him, Eisele secured a surveyor and then for the first time learned where his north line would be if his lot contained a full acre. Whereupon, he placed a sign on plaintiff's house, tore out his fence, dug up some trees that had been planted by plaintiff, and as he stated, "I wired up my side of the house to prevent depredations from boys in the neighborhood, * * *." Plaintiff testifies that she did not see either of these contracts after they were executed nor the deed after she signed it until after the title to the ground on which she had constructed the dwelling house was questioned, and she concedes that there was a mistake made in drawing the deed in not including in it the right to purchase one inch of water from the ditch company. She acknowledges herself ready at any time to do equity by making conveyance of the water right. The only evidence of the value of the land is to the effect that at the time of trial it was worth $500 an acre, and in 1927 would have been worth about $700 an acre. The strip in dispute contains .18 of an acre.

The real issue between the parties is whether the land on the south end of the block intended to be conveyed to the defendant was a full acre or whether it was the specific tract laid out by Toner, the surveyor, with a frontage of 133.62 feet on Lamar street. If the former was the intention of the parties a part of the dwelling house constructed by plaintiff is on defendant's land. If the latter was their intention plaintiff is the owner of the thirty-foot strip of land involved in this litigation. There is an irreconcilable conflict in the testimony on this proposition. The trial court saw and heard the witnesses and resolved the issue in favor of the plaintiff.

█ If in the deed the land had been described as a one acre tract bounded on the north by a line whose extremities are two four-by-four posts set in the ground, the metes and bounds—as stated by the trial judge—

would control. As further pointed out by the court a description of land by quantity alone necessarily leaves the boundaries of the tract indefinite, requiring future action to establish them. Before the deed was executed the parties located the north boundary of the tract described in the first contract as the south acre of the block, and Eisele built a fence on the line. It is clearly established by the evidence that when the deed was executed and delivered and final payment made, both parties had in mind the tract south of the fence built on the line laid out by Toner, the one believing that this was what he was buying and the other believing that this was what she was selling. True, defendant thought the land he had fenced contained one acre, but at the time he received his deed and made the final payment, he believed also that he was getting no more than that which lay south of the fence that he had built on the established line. The parties to the deed did not see fit to have the property described by metes and bounds in the deed, but by unequivocal acts plaintiff procured it to be laid out by metes and bounds, and the evidence justifies the conclusion that defendant, as shown by his immediate and six years continuous acquiescence, accepted the tract so laid out as the property he had purchased. Defendant, under daily observance by plaintiff, built a permanent fence; and plaintiff under daily observance by defendant, constructed a dwelling house, relying upon their agreed location of the north boundary line of the property intended to be conveyed by the deed. In *Sobol v. Gulinson,* 94 Colo. 92, 28 P. (2d) 810, we said: "We approve the following statement of the law found in the note in 69 A. L. R. at page 1433: 'It is a well-settled principle of law that a boundary line may, under certain circumstances, be permanently and irrevocably established by parol agreement of adjoining owners. When there is a doubt or uncertainty, or a dispute has arisen, as to the true location of a boundary line, the adjoining owners may by parol agreement establish a division line; and, where

the agreement is executed and actual possession is taken under such agreement, it is conclusive against the owners and those claiming under them.' ''

We do not overlook the fact that to justify the remedy of reformation, clear, unequivocal, and indubitable evidence is necessary. *Hooper v. Ins. Co.,* 92 Colo. 376, 20 P. (2d) 1011. In this case a large number of former decisions—though not all—are cited in support of the rule as to the quantum of proof required. Assuming that the action is to procure a reformation of the deed, rather than one merely to obtain a construction of an indefinitely described boundary, as plaintiff contends and as the trial court understood it, we shall consider whether the quantum of proof is sufficient. If sufficient to permit reformation, it undoubtedly is sufficient if the action be deemed one to determine an indefinite boundary. Defendant and his wife testified that they were assured the property set off to them by the surveyor contained an acre of ground. The testimony of Toner, and Mrs. Barnhart is equally positive that they were not so advised. Mrs. Barnhart further testified that she had agreed to give a sufficient quantity of land to defendant to furnish a driveway and satisfactory access to the buildings on the land. The trial court saw and heard the witnesses and it was his province to determine who spoke truely and who falsely. Even were this a criminal case we would not be authorized to hold as a matter of law that the evidence is not so clear, unequivocal and indubitable that it could not produce in the mind of a reasonable man a mental conviction of its truth beyond a reasonable doubt. Moreover there are corroborating circumstances to be found in the record. Neither the first contract nor the deed was drawn by an attorney. The first contract contained a description of the water right and an agreement to convey it. The deed omitted reference to it entirely. The contract called for a conveyance to Eisele and his wife. The deed was to Eisele alone. Admittedly the water right should have

been included, and the deed must be reformed in this respect to do justice to the defendant. If no heed was given to the contract in drawing the deed it leaves the situation, in practical effect, as though the plaintiff and defendant had agreed upon a tract as suitable for defendant's purposes, located its boundaries and had then described it as the south acre of the block. Toner was a surveyor of twenty-two years experience. He testifies to the amount of land within the boundaries he laid out, exclusive of streets, to the one-hundredth of an acre. He says he told the defendant that the frontage of the tract he had laid out was 133.62 feet. Both Toner and the surveyor employed by defendant agree on the location of the line that would give defendant a full acre exclusive of the street and also that the land laid out by Toner on which defendant placed his house gives defendant .82 acres, excluding the street, and 1.03 acres including to the middle of the street. The computation of the amount of ground in a rectangular tract with a frontage of 133.62 feet and a depth of 266 feet is not a complicated mathematical problem and the court may well have assumed the great improbability that a surveyor subject to check by another surveyor and a demonstration of the falsity of the statement that a tract of such dimensions contained less than an acre, would falsely have assured Eisele and his wife that it did contain an acre. Assuming a possible motive on Mrs. Barnhart's part to commit a fraud on Eisele, no motive is shown which would impel Toner to participate in such fraud, particularly one involving a breach of the ethics of his profession by a palpable falsification of a simple mathematical computation which would not deceive any layman who cared to check it, even one with much less than an university education, which defendant states he possessed.

In the light of the testimony and the circumstances disclosed by the record, even judged by the rule of our decisions requiring a quantum of proof equal to

that required in a criminal case before reformation will be granted, we are unable to say, the credibility of witnesses being involved—a matter solely for the trial court —that the evidence is insufficient in law to meet such requirement and to permit a reformation of the deed if that be necessary, or to justify the conclusion of the trial court that the description contained in the deed was intended by the parties to convey the property lying south of the line laid out by one, and acquiesced in by the other, prior to the execution of the deed and delivery of the same. In the final analysis the case presents nothing more than one of conflicting evidence, which the trial court resolved in favor of the plaintiff.

Judgment affirmed.

Mr. Justice Holland dissents.