[Civ. No. 19118.   Second Dist., Div. Three.   Oct. 21, 1952.]

ANNA L. FRERICKS et al., Respondents, v. H. E. SORENSEN et al., Appellants.

George L. Hampton for Appellants.

Richard C. Fildew for Respondents.

SHINN, P. J.—The property in controversy in this action is a parcel of land 50.5 feet by 66 feet, being a part of Lot 111, tract 1,000 in the county of Los Angeles. Plaintiffs claimed title by reason of facts to be hereinafter related and also asserted a prescriptive title. They prevailed and defendants appeal.

Lot 111 is bounded on the north by Albers Street, on the west by Sunnyslope Avenue, and on the south by Chandler Boulevard, although the south 50.5 feet are included in the boulevard. Inclusive of this 50.5 feet, Lot 111 is 645.83 feet in length.

The court found the following facts: (1) On February 29, 1940, Lillian B. Thatcher was the owner of the west 66 feet of Lot 111; (2) on that date she executed a deed conveying to Harry W. Ferguson and wife the south 292 feet of the west 66 feet of Lot 111; the Fergusons entered into possession of 292 feet measured from the north line of Chandler Boulevard and continued in possession until they sold the property to Grey and wife, March 26, 1942; (3) at the time the Greys purchased there was a shed 54 feet by 16 feet, located within and at the north end of the 292 feet; immediately north of the shed was a stake and a fence which extended across the lot north of the shed. The stake and fence were 342.5 feet north of the south line of Lot 111; (4) the Greys later sold to Kasparian and wife in 1946, and in 1948 the Kasparians sold to plaintiffs. The several deeds described the parcel as the south 292 feet of Lot 111. In February, 1944, Lillian B. Thatcher conveyed to defendants Sorensen the west 66 feet of Lot 111, excepting the south 292 feet thereof.

Plaintiffs and their predecessors, as well as Thatcher and wife and Sorensen and wife, overlooked the fact that the south 50.5 feet of the lot had been taken for street purposes. Everyone supposed that the south 292 feet of the lot extended to a point just north of the shed. It was not until the spring of 1950, after examining tax bills, that the Sorensens laid claim to the disputed 50.5 feet.

When the Greys purchased from Ferguson, March 26, 1942, Mr. Thatcher, acting as agent for his wife, represented to Grey that the Fergusons' land extended just north of the shed to a fence and to the stake which he pointed out to Ferguson and Grey. The Greys acted upon this representation in making their purchase. The court also found that Ferguson and Grey were uncertain as to the north boundary of the property to be conveyed, that a controversy arose concerning the same and that Mrs. Thatcher, acting through her husband as her agent, agreed with Ferguson and Grey that the north boundary was a line just north of the shed. The Greys entered into possession of the land and the shed. The court found that Grey "did make considerable and expensive improvements upon the shed and other portions of the 50.5 strip." He spent $200 or $300 in improvements of the shed,

put up chicken batteries and rabbit hutches, repaired a lath house and pruned trees on the 50.5-foot strip, all without objection on the part of the Thatchers or the Sorensens. Upon a second occasion in March, 1942, when Mr. Thatcher pointed out the boundary to Ferguson and Grey, Mrs. Thatcher agreed with the latter that the north boundary of the land was the line of the fence just north of the shed. It was also found that the Sorensens witnessed the occupancy of the strip by the Kasparians and acquiesced in their fencing the strip and making extensive improvements, and they also observed the occupancy by plaintiffs and permitted them to make improvements thereon, all without any objection until the spring of 1950.

▊ When Grey purchased he had a right to rely upon the representations of the Thatchers, who presumably had superior knowledge as to the boundaries of the land they had sold. He was not required to have a survey made, and even if he had measured 292 feet from the shed to the north line of Chandler Boulevard, he would not have known that Lot 111 extended into the street, and his measurement would not have been in conflict with Thatcher's representation. The Thatchers undoubtedly acted in good faith. They believed Ferguson had purchased 292 feet, measured from the boulevard as, indeed, he had, although the land was incorrectly described in his deed. The Thatchers were concluded from questioning the title of Grey to the 50.5-foot strip. The original understanding with Ferguson, the representation made to Grey and acquiescence in possession of the strip and the making of improvements by Ferguson and Grey combined to make out a complete case of equitable estoppel. (*Grants Pass Land & Water Co.* v. *Brown,* 168 Cal. 456, 462 [143 P. 754].) The Sorensens, as successors of the Thatchers, were likewise estopped. (*Stanley* v. *Green,* 12 Cal. 148, 163.)

The court found that a valid boundary line agreement had been entered into between the Thatchers on the one side, and Ferguson and Grey on the other. The evidence supports this finding. ▊ There was uncertainty on the part of Ferguson and Grey as to the location of the north boundary, otherwise, Thatcher would not have been called upon to locate the line. The boundary thus agreed upon was accepted and acquiesced in by the several subsequent holders of the adjoining parcel and the portion now in dispute thereby attached itself to the land of Grey as a definition of the land that had been sold to Ferguson and which Grey was pur-

chasing. In order to have a valid agreement fixing this boundary, it was not necessary that an actual controversy or dispute should have existed. Upon these propositions the decision in *Price* v. *De Reyes,* 161 Cal. 484 [119 P. 893], is controlling.

The court also found that since March, 1942, the south 342.05 feet of the west 66 feet of Lot 111 has been in continuous possession of plaintiffs and their predecessors in interest, has been protected by a substantial enclosure, cultivated and improved, and that said occupation has been continuous, open and hostile to the defendants; also that plaintiffs and their predecessors in interest have paid all taxes on said south 342.05 feet. The Fergusons and the Greys paid taxes for the years 1940 to 1946, inclusive, under assessments upon the west 66 feet of Lot 111, with a depth of 241.5 feet bounded on the south by Chandler Boulevard; since then the Kasparians and plaintiffs have paid upon land described on the assessment roll as the west 66 feet of the south 241.5 feet of the north 595.33 feet of Lot 111. Prior to 1944 the shed and other improvements were assessed to the whole of the west 66 feet; thereafter, they were assessed to the parcel of land which was assessed to plaintiffs and their predecessors. Although these descriptions on the tax roll conformed to the deeds of the parties, they did not describe the parcels which the parties occupied. The land which was assessed to plaintiffs and their predecessors by a visual observation on the ground was 342.05 feet in depth. This was necessarily so inasmuch as the improvements were assessed to their land. Plaintiffs and their predecessors not only paid taxes upon the land which they occupied, but they were the equitable owners of it.

While the assessment roll described defendants' land according to their deed, they were not actually assessed for the 50.5 feet upon which the shed and other improvements were located. The assessment roll did not correctly describe the land which was actually assessed to either the plaintiffs or the defendants and their predecessors. Payment of taxes under these circumstances was payment of taxes upon land in the possession of the parties. The court correctly determined that plaintiffs and their predecessors had paid all taxes on the land in dispute and that plaintiffs have a good prescriptive title. (*Price* v. *De Reyes, supra,* 161 Cal. 484; *Sorensen* v. *Costa,* 32 Cal.2d 453 [196 P.2d 900].)

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.