[Civ. No. 5742.   Fourth Dist.   Jan. 30, 1958.]

LOWER YUCAIPA WATER COMPANY (a Corporation), Appellant, v. THOMAS B. HILL et al., Respondents.

Edwin R. Hales, Lonergan & Jordan, John B. Lonergan and A. M. Sessions for Appellant.

Harold King for Respondents.

BARNARD, P. J.—This is an appeal from a judgment in favor of the defendants in an action involving a boundary dispute. The plaintiff is the owner of 200 acres of land, and also claims to own all of Government Lot 2 in a certain section 7, all of said land being in San Bernardino County. The defendants are the owners of Government Lot 2 in a certain Section 18 in Riverside County, which lies immediately south of Government Lot 2 in said Section 7. The parties received title, respectively, by deeds which described the properties according to the description shown on recorded government maps. The section line between Sections 7 and 18 is also the line between San Bernardino and Riverside Counties. The location of that line on the ground was finally settled in 1932 as a result of a joint survey made by the two counties, whereby the dividing line was established and accepted by both counties. The line thus established, insofar as the parcels here involved are concerned, runs east and west in the bed of Live Oak Canyon Creek. A county road known as "Live Oak Canyon Road" runs parallel to and a short distance north of Live Oak Canyon Creek. The strip of land between this creek and this road, containing about three acres, is the disputed area here involved.

It appears from the evidence that the defendants and their predecessors had owned this land in Government Lot 2 of Section 18 since 1898; that since 1898 they have maintained a fence extending to and along the southerly edge of Live Oak Canyon Road, which has completely enclosed the strip of land here involved along with their other land; and that they have used and occupied all of the land as thus enclosed, including the disputed area, and have claimed ownership thereof from 1898 until the present time. In 1914, because of an uncertainty as to the true location of the county and

section line the then owner of the defendants' land and the then owner of the plaintiff's land had a survey made by a surveyor named Brown for the purpose of locating the section line. Brown located the section line at the Live Oak Canyon Road, and those owners then agreed to accept that line, where the fence was, as the boundary between these properties. In 1915, when the county of San Bernardino decided to improve Live Oak Canyon Road those owners were requested by the county to give an easement to the county for road purposes, and each of them conveyed 15 feet to the county for that purpose.

As late as 1932 an uncertainty and dispute existed with respect to the true location of this section line and this line between the two counties. In that year, for the purpose of settling this uncertainty and dispute, a joint survey was made by the two counties in which the section line was established along the bed of Live Oak Canyon Creek. This line was accepted by both counties and a new map was filed. The plaintiff acquired its land in Government Lot 2 in said Section 7 in 1929. The defendants acquired their land in Government Lot 2 in Section 18 in 1950. In September, 1954, the president and manager of the plaintiff contacted Mr. Hill and claimed that the plaintiff owned the strip in question, which Hill disputed.

In this action brought in February, 1955, the complaint alleged plaintiff's ownership of a described 240 acres, including Lot 2 in Section 7; that the defendants are the owners of Lot 2 in Section 18; that the division line between their properties is the section line between Sections 7 and 18, which is also the county line; that the defendants dispute and deny the location of said dividing line; and that the said section line is and constitutes the correct dividing line between their respective properties. The prayer was that plaintiff's title be quieted, and that it be adjudged that the true location of the dividing line between the properties of the parties is said section line. The defendants answered and also filed a cross-complaint alleging that they owned the disputed strip of land; that a boundary line had been agreed upon and acquiesced in by both parties and their predecessors in interest for more than 20 years; and that during all of said time the strip in question has been occupied and used by the defendants and their predecessors, and has been and now is entirely enclosed by a good and substantial fence. The court found in favor of the defendants, finding that it is not true that

the plaintiff or its predecessors were, have been or now are the owners and in possession or entitled to possession of the strip of land in dispute; that it is not true that the dividing line described in the complaint constitutes the correct dividing line between the land of the plaintiff and the land of the defendants; and that the defendants and cross-complainants are the owners in fee of the strip of land in dispute, as particularly described in the findings. Judgment was entered decreeing that the defendants and cross-complainants are the owners in fee, in possession and entitled to possession of the described area in dispute; and that the plaintiff and cross-defendant has no right, title or interest of any kind or right of possession in or to the area in dispute. This appeal followed.

■ The appellant first contends that, aside from any previous basis of ownership, it acquired title to the disputed area by adverse possession during the period from 1929 through 1937. It is argued that the description in the appellant's deed covered all of Lot 2 in Section 7 which would include the disputed property lying between Live Oak Canyon Road and Live Oak Canyon Creek; that by virtue of this deed the appellant held the disputed area under color of title; that the appellant had paid all taxes for its land, including the disputed area subsequent to 1929; and that the evidence shows that the appellant leased its land to various tenants between 1929 and 1937 or 1938, and that these tenants farmed the land, including the disputed area, during those years. While there was testimony that the appellant leased its lands during those years, and that its tenants farmed the disputed area, no more than a conflict in the evidence appears with respect to the use and occupation of the disputed strip during those years, and there was no evidence of any kind that the appellant or its tenants occupied or used the disputed area in any way after 1937 or possibly 1938. On the other hand, there was ample evidence on behalf of the respondents that they and their predecessors had occupied and farmed or pastured the disputed area, without objection, at all times from 1914 or before until shortly before this action was filed, and that during all of that time the disputed area was completely enclosed with a fence connecting it with the land which the respondents and their predecessors admittedly owned. There was evidence that in 1943 one of respondents' predecessors constructed a new and "exceptionally good" fence, in the same location where the other fence had previ-

ously been; and that while this owner had once talked to one director of the plaintiff corporation about the description in the deeds nothing was done and no objection was raised as to his occupancy of the strip in question. The evidence as to occupancy and use of the disputed strip by the respondents and their predecessors after 1938 was uncontradicted, except that plaintiff's president testified that he had been told that the man who built the new fence used the strip in question with the permission of a Mr. Mulvihill. The respondents' use was in fact confirmed by the testimony of some of appellant's own witnesses. The man to whom the appellant had leased its land in 1937 and 1938 testified that he did not use the disputed area in those years, and that since 1938 the people on the land now owned by the respondents had used the disputed area for pasture, and that the disputed area had since 1938 been occupied and claimed by them. He also testified that he was a member of the board of directors of the appellant corporation from 1938 to 1943, and that he had never heard any claim that the plaintiff owned the disputed area. The president of the appellant corporation, in response to a question as to whether the people who have owned and occupied the Hill ranch have not also used the disputed area "at least since 1938 down to the present time," answered "Yes, they have." Under the conflicting evidence appellant's claim that it had acquired title by adverse possession during the period from 1929 to 1937 cannot be sustained. On the other hand, the evidence would have supported a finding that the respondents had acquired title by adverse possession, in view of the other evidence on the issue as to an agreed boundary.

It was stipulated that each party had paid all taxes assessed in accordance with the descriptions given in their respective deeds. That matter is not conclusive under the circumstances which here appear. (*Caballero* v. *Balamotis,* 144 Cal.App.2d 58 [300 P.2d 363] ; *Winchell* v. *Lambert,* 146 Cal.App.2d 575 [304 P.2d 149] ; *Frericks* v. *Sorensen,* 113 Cal.App.2d 759 [248 P.2d 949] ; *Price* v. *De Reyes,* 161 Cal. 484 [119 P. 893].) Each of the parties paid taxes in accordance with the tax bills submitted in accordance with the descriptions contained in their deeds, and under the authorities such payment constitutes the payment of taxes on the area up to the agreed-upon boundary.

It is next contended that the respondents failed to establish title by virtue of an alleged boundary agreement

in 1914. It is argued that where adjoining owners agree on a dividing line knowing that it is not the true line and with the purpose of thereby making an oral conveyance, the agreement is void as an attempt to make an oral conveyance of land; that one of the requisites for a valid boundary agreement is the existence of an uncertainty or dispute as to the true location of the boundary; that where an accurate description of the true line may be ascertained from existing government monuments and field notes the location of the line is not sufficiently uncertain to be the subject of an agreed boundary; that a boundary line is not unknown or uncertain when an accurate description thereof may be ascertained from existing government maps, monuments and field notes; that a boundary is considered definite and certain when by survey it can be made certain from the deed; and that it is apparent here, from the testimony of the county surveyor of San Bernardino County, that the field notes of the government survey which were available fixed the county line in the creek bottom.

The predecessor of the respondents, who then owned their land, testified that there had been some uncertainty as to the location of the county line, which was the section line, for some years before 1914, as a result of which that survey was made. The result of that survey indicates that the surveyor then employed was unable to locate the true boundary line on the ground. That an uncertainty existed and continued to exist as to the exact location of the boundary line between these two counties is clearly shown by the fact that these counties found it necessary or desirable to have a joint survey made in 1932, and then agreed to accept the result of that survey as establishing the boundary between the two counties. The county surveyor of San Bernardino County testified that he assisted in making that survey, that he had three maps showing government surveys made in 1871, in 1879 and in 1883; that the 1879 map indicated a corner and the creek as well, but the distances given could not be verified and did not correspond with the situation found on the ground; that the 1871 map showed this corner as being located some distance south of the creek; that they were unable to find a corner monument which fitted the calls of the government field notes, and had to work as best they could from other points which could be better ascertained; that some of the surrounding land is very hilly and very rugged, and for that reason there was likely to be a difference between surveys made at

different times; and that the purpose of the 1932 survey was to do away with the existing uncertainty and the dispute as to where the true line was located. The evidence here was sufficient to establish an agreed boundary line. (*Mello* v. *Weaver*, 36 Cal.2d 456 [224 P.2d 691].)

It is next contended that a conversation between one of the directors of the appellant corporation and the then owner of the respondents' land somewhere about 1946 or 1947 established the true county line as the boundary between these respective properties. This owner testified that he had a conversation with this director, but that conversation does not have the effect claimed for it. In effect, this witness merely testified that he was aware that there was a discrepancy between the description in his deed and the land he thought he had bought, that he had it in mind to straighten the matter out, and that he sold the land before anything was done about it.

It is further contended that the findings of fact were improper in that there was no express finding of an agreed boundary between these parcels of land, and no express finding with reference to the issues of adverse possession. There were sufficient findings with respect to the ultimate facts, which clearly cover and determine the only controversy between the parties, and the object of the action, which was to have the boundary line between these parcels of land judicially determined. No prejudice appears in this connection.

Finally, it is contended that since the appellant sought to quiet title to its entire tract of 240 acres, and since the respondents never at any time asserted any claim to any part of that tract except the portion lying between the creek and the road, the court erred in not quieting plaintiff's title in and to the remainder of the tract. While the complaint alleges appellant's ownership of this entire tract and the prayer asked that its title be quieted, this was joined in the same sentence with a prayer that the defendants be required to set forth any claim they had with respect to the location of the dividing line, that the true location of the dividing line be determined by the court, and that it be decreed that the plaintiff is the owner of its land up to the true location of the dividing line as described in the complaint. The answer and cross-complaint clearly showed that the respondents' claim was limited to the disputed area and that they made no claim to the remainder of appellant's land as described in the complaint. The case was tried solely on that theory, and

the findings and judgment were framed to apply to the sole issue thus presented. While the judgment could well have included a provision quieting the appellant's title in the remainder of its land no prejudice appears, and it is unnecessary to remand the cause for the purpose of adding such a provision to the judgment.

The judgment is affirmed.

Mussell, J., and Waite, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.