[Civ. No. 22972.   Second Dist., Div. One.   May 9, 1958.]

MILAN IRA DREW et al., Appellants, v. LESLIE MUMFORD et al., Respondents.

Cyril A. Walton for Appellants.

James L. Garcia for Respondents.

FOURT, J.—This is an appeal from a judgment declaring defendants to be the owners in fee simple of a small strip of ground.

In November, 1944, when defendants acquired their property, the adjacent property was owned by plaintiff Gladys C. Drew and her deceased husband. At this time a wooden and wire fence was standing. There is no testimony in the record indicating when or by whom this fence was constructed, or of any agreements which may have been entered into at that time that such fence was or was not to constitute the boundary line between the properties. This fence, which had become dilapidated and which was described as ''raggly'' was torn down on or about January, 1956, by plaintiff Milan Ira Drew. Later in January or February, 1956, a new wire fence was constructed by defendants. There is a conflict in the evi-

dence as to whether the new wire fence was constructed, as plaintiffs contend, approximately a foot to a foot and one-half further into their property, or whether it was constructed, as defendants contend, along the same line as the wooden fence. The parties did not have any discussions apparently as to the location of the fence except for a comment which Mr. Drew testified that he made to Mr. Mumford after the old fence had been removed that "the best way to do when you were putting up a fence is always to have your property surveyed and you know you have it on the line."

The testimony is undisputed that defendants alone assumed the obligation to pay for the fence and that plaintiffs promised defendants to make a "donation on a fence," and did actually pay to defendants each month for six months approximately one-half of the amount of the contractual obligation assumed by defendants on an 18-month contract; that plaintiffs thereafter refused to make any additional contributions; that plaintiffs then had their property surveyed, which survey indicated the fence to be located on their property 21 inches from the property line described in their deed; and that plaintiffs then instituted the present action for an injunction to restrain defendants from maintaining the wire fence upon plaintiffs' land, and demanding that defendants be ordered to remove said fence from plaintiffs' property. In their answer defendants asserted title to said property to be in defendants, setting up the defenses of adverse possession, agreed boundary, laches and estoppel.

Findings of fact and conclusions of law were waived, and the only brief which has been filed is appellants' opening brief, in which it is claimed that the trial court should have granted appellants injunctive relief; that title by adverse possession was not established; that there was no agreement between the parties, either express or implied, establishing a boundary line; that appellants were not estopped to claim the true boundary; and that appellants were not guilty of laches.

It is fundamental that the propriety of issuing an injunction rests in the sound discretion of the court, and being a summary and extraordinary remedy, mandatory injunctions are rarely granted in the absence of a clear showing of irreparable damage under particular circumstances indicating the party seeking the injunction is deserving of injunctive relief and has offered to do equity. The complaint makes no mention of any offer by appellants to assume the cost of moving the fence, and appellants concede there is no

evidence in the record as to the cost of moving the fence. Nevertheless, appellants in their brief state "it can be assumed that this expense would be trivial comparable to the loss sustained by the appellants if the judgment of the trial court is allowed to stand." ■ This court lacks the power on appeal to design a remedy which appellants for the first time now offer as an equitable solution to the problem, that of granting "the appellants injunctive relief on the condition that they bear the expense of moving said fence to the true boundary line."

■ Appellants argue correctly that "mere acquiescence in the existence of a fence and the occupying of land up to it does not amount to an agreement that it was an accepted boundary line," relying upon *Staniford* v. *Trombly*, 181 Cal. 372 [186 P. 599] and *Dibirt* v. *Bopp*, 4 Cal.App.2d 541 [41 P.2d 174]. Appellants then recognize "the rule that coterminous owners may by agreement *implied from acquiescence* establish and fix their mutual boundary line." (Emphasis added.) They contend, however, that the rule is applicable only where the true line is otherwise unknown or uncertain, and cite *Meacci* v. *Kochergen*, 141 Cal.App.2d 207 [296 P.2d 573] as authority that "a boundary is considered definite and certain when by survey it can be made certain from the deed." The case of *Meacci* v. *Kochergen, supra*, was a quiet title and ejectment action and no special defenses were set up in the answer. In reversing the judgment of the trial court for defendant, the court went on to state (at p. 213) : ". . . there was no uncertainty as to the true boundary line. The true boundary line was readily ascertainable from the survey made, and *the line sought to be established by the defendant was not certain.* We conclude that, under the circumstances shown, plaintiffs were free to claim the true boundary line as shown in their deed." (Emphasis added.)

That it is the particular factual situation which is determinative was stressed in *Wilder* v. *Nicolaus*, 50 Cal.App. 776, 783-784 [195 P. 1068], ". . . there is no doubt of the existence of the fence and the occupancy of the land as claimed by appellant for a much longer period than required by the statute of limitations. But it is claimed by respondent that there was no uncertainty as to the location of the true boundary line, and there was no agreement that the fence was on the true line.

"We may notice only the latter contention, as it is decisive of the controversy. Whether the circumstances, in the ab-

sence of direct evidence, would require a conclusion favorable to appellant, we need not determine, since there is the testimony of two witnesses to the effect that there was no such agreement between the owners of the property at the time the fence was built. This testimony is the subject of mirth and derision on the part of appellant, but its credibility was manifestly for the determination of the trial court." (See also *Moniz* v. *Peterman*, 220 Cal. 429, 435 [31 P.2d 353].)

The problem presented by acquiescence in a fence as a boundary line between coterminous owners when the fence was situated 18 inches from the boundary line indicated by a survey made after a dispute had arisen, was considered in *Price* v. *De Reyes*, 161 Cal. 484 [119 P. 893], where plaintiffs contended the rule was applicable only if the true boundary was absolutely unascertainable. The court (at p. 489) stated: "We find no such qualification of the rule stated in any of the authorities. Obviously it could not be thus qualified. It is only where the true location is subsequently ascertained that actions of this kind arise. Consequently, the rule could not apply if the location was unascertainable. According to all the authorities, it is sufficient if the true location is uncertain and the parties fix the boundary because of its uncertainty and afterward occupy up to it and make improvements thereon."

In this case when defendants purchased their property they took possession of property up to the wooden and wire fence with the knowledge of plaintiff Gladys C. Drew and her deceased husband. Apparently the new wire fence constitutes the only improvement made on the property, and there is substantial evidence to support an implied finding that the new wire fence was located on the same line as the old wooden and wire fence. There is also substantial evidence to support an implied finding of an implied agreement that the new fence was to be a commonly owned fence on the agreed boundary line between the properties. It is unlikely that defendants would have intended to construct a fence upon plaintiffs' property or to pay all or any portion of the cost of such a fence. In addition, plaintiffs made no objection to the manner or place of construction of the fence before or during the course of its construction, and, on the contrary, impliedly approved thereof by their conduct in promising to contribute to the cost.

The judgment decreed defendants to be the owners in fee simple of the 21-inch strip of ground without indicating

the basis to be an agreed boundary, estoppel or adverse possession, each of which was pleaded. In their brief, appellants claim that there is no showing that the occupation of the disputed 21 inches was with any intention to claim ownership of the property as is required for adverse possession. However, there is substantial evidence that at least since 1946 the disputed strip was openly occupied by defendants with an intention to claim it as their own. Appellants also contend that to establish adverse possession, the adverse claimant must prove payment of taxes on the property for the period of five years, citing Code of Civil Procedure, section 325, which is set forth in full: "For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only:

"1. Where it has been protected by a substantial inclosure.

"2. Where it has been usually cultivated or improved.

"*Provided, however,* that in no case shall adverse possession be considered established under the provision of any section or sections of this Code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, State, county or municipal, which have been levied and assessed upon such land."

In *Price* v. *De Reyes, supra,* it was conceded that both parties had paid taxes assessed according to the descriptions in their respective deeds. The court found that the parties had fixed the boundary line, and then stated (at pp. 489-490), ". . . a division line thus established 'attaches itself to the deeds of the respective parties' and defines the lands described in each deed, so that the one in the possession of the overlap holds the title thereto by the same tenure as he holds the lands technically embraced in the description. (Citing cases.) The consequence is that under such circumstances the payment of taxes assessed in this manner is a payment on the land in the possession of the parties. Furthermore, the natural inference would be that the assessor put the value on the land and improvements of each party as disclosed by the visible possession, rather than that he ascertained the true line by a careful survey and assessed to one a part of the possessions of the other." The case of *Price* v. *De Reyes, supra,* was cited with approval in *Wagner* v. *Meinzer,* 53 Cal.App. 783, 784 [200 P. 838], and again in *Frericks* v. *Sorensen,* 113 Cal.App. 2d 759 [248 P.2d 949], where the court went on to say (at p.

762), "Although these descriptions on the tax roll conformed to the deeds of the parties, they did not describe the parcels which the parties occupied. . . . Payment of taxes under these circumstances was payment of taxes upon land in the possession of the parties. The court correctly determined that plaintiffs and their predecessors had paid all taxes on the land in dispute and that plaintiffs have a good prescriptive title. (Citing cases.)"

Under the circumstances, it would be possible to infer in support of the judgment in the instant case that taxes were assessed and paid on the basis of the property in the possession of the parties.

The judgment is affirmed.

White, P. J., and Lillie, J., concurred.