[Civ. No. 6535. Fourth Dist. June 5, 1961.]

WILLIAM H. KNEALE, Appellant, v. PAUL RHOADS et al., Respondents.

PAUL RHOADS et al., Respondents, v. WILLIAM H. KNEALE, Appellant.

(Consolidated Cases.)

Donahue & Hastin and Roger C. Donahue for Appellant.

Deadrich & Bates and Kenneth H. Bates for Respondents.

SHEPARD, J.—This is an action to quiet title, combined in trial with an action to recover for water delivered.

## PLEADINGS

Action 75029 was originally commenced by Paul Rhoads and Virginia Rhoads, respondents herein, against William H. Kneale, appellant herein, and Velna A. Kneale (who did not appeal) in the Justice Court of Kern River Judicial District, Kern County, on January 2, 1959, to collect unpaid charges for water delivered. The complaint was in three counts of (1) *indebitatus assumpsit*, (2) open book account, and (3) account stated. The Kneales answered by general denial and affirmative defense of alleged lack of title in Rhoads to the water system from which the water was delivered and, by cross-complaint, have alleged unlawful detainer of certain described land, praying damages. The cause was then (about April 22, 1959) transferred to the Superior Court of Kern County and became action No. 75029. Cross-defendants Rhoads answered and admitted possession and claim of title, and denied their lack of title.

Action No. 74299 was commenced January 12, 1959, by William H. Kneale against Paul Rhoads and Virginia Rhoads to quiet title to the same land described in the cross-complaint in action No. 75029. Again Rhoads answered, admitting their possession and claim of title, denying lack of title, and filed a cross-complaint to quiet their own title to the same described land against Kneale. Kneale answered by general denial.

After trial before the court without jury, judgment was rendered for plaintiffs Rhoads, quieting their title to the described land against both of the Kneales and giving judgment to the Rhoads against the Kneales in the sum of $583.50. William H. Kneale appeals. Velna A. Kneale did not appeal.

## FACTS

In 1950 respondents owned a tract of land from which they sold 15 acres to William H. Kneale and Mattie Kneale, husband and wife, and agreed that if the Kneales could not obtain an adequate well site for water, respondents would provide a well site. In April 1951, the Kneales had not found a satisfactory well site on the 15 acres, and asked respondents for one. Respondents agreed. The Kneales looked the property over, identified a physical location, and provided to respondents a legal description of a 10 x 24 foot parcel of land, which the Kneales mistakenly thought correctly described the well site they had chosen. Respondents executed a deed, using the description furnished by the Kneales. The Kneales wanted the

deed in some other form, and made up their own deed covering the same description. Respondents also executed and delivered this deed to the Kneales. The Kneales never went into possession of the piece of land described in the deed, but instead went to the site actually chosen, there drilled a well and installed a water system, delivering water both to themselves and to some neighbors on charges set by Kneales. Except by the incorporation of the erroneous description contained in the deeds into the pleadings, appellant never at any time occupied nor claimed ownership of the property described in the deed.

In 1952, becoming dissatisfied with the burdens of furnishing water to others, Kneales approached respondents and asked to sell the well site and water system back to respondents. Respondents consented. An agreement to this effect was drawn, and signed by the parties. A down payment was made, and possession was immediately assumed by respondents. By 1953 the purchase price of $1,250 was fully paid by cash and credits on water charges. Mattie, whom appellant testified was then the manager of community affairs for the Kneales, marked the contract paid in full and returned it to respondents along with one of the deeds, saying at the same time: "This clears it up you won't have to do anything, the deed was never recorded as I expected this would work out." Later, on several occasions and to different people as well as to both of respondents, both Mattie and appellant separately and in the presence of each other stated, in effect, that they had sold the well site and system back to respondents.

In 1954 Mattie died, and in the course of the probate of her estate it was found that one of the deeds had actually been recorded. Appellant succeeded to the rights of Mattie, through probate. However, appellant made no immediate contention to respondents about the ownership. In 1958 appellant and his new wife, Velna, filed a complaint, under oath, with the Public Utilities Commission of California alleging, in effect, that in 1952 the water system had been sold back to respondents. In the hearings on that complaint appellant testified, under oath, that the water system was sold back to respondents in 1952 for $1,250 and was fully paid for.

On cross-examination in the present action appellant testified, without equivocation, that he claimed no interest in the property described in the deed, and that his sole and only claim was in connection with the true well site and water system. The pretrial order provides for determination of the charges for delivery of water up to the time of trial.

### FINDINGS

Appellant does not make his points on appeal entirely clear. His apparent contentions of insufficiency of the evidence are not supported by a recital of material evidence with adequate transcription references. It is possible that he may intend thereby to waive these points, and this court might well be justified in considering them so waived. (*Tesseyman* v. *Fisher,* 113 Cal.App.2d 404, 407 [4] [248 P.2d 471] ; *People* v. *Fowler,* 32 Cal.App.2d Supp. 737, 751 [9] [84 P.2d 326].)

Appellant appears to contend that the decree quieting title is based solely on the findings that respondents were in open, notorious, exclusive, adverse possession of the described land with full payment of taxes for the years from 1952 to date of trial. Appellant appears to contend further that this finding is not justified because (he contends) the record shows payment of taxes by appellant, on the land described, during some of the intervening years. There is some confusion in the record as to just what appellant did intend to pay taxes on. He did, in fact, pay some taxes on an assessment on the land contained within the erroneous description, which is the same description used in the pleadings and in the decree. However, the assessment indicated there were no improvements thereon. The evidence shows that the described land actually underlies parts of buildings on land other than the true well site, owned and occupied by respondents. Respondents have been in possession of the land and have paid the taxes on such improvements at all times mentioned in this action. Appellant has never at any time sought possession thereof. The record clearly indicates as to the land, the description of which is used in the deed, the complaint and the decree, that such description was simply a mutual mistake of the parties as to its true location and that it was never at any time the actual land intended to be conveyed by the deed from respondents to appellant. It would appear that the decree quieting title was necessitated only by the presence of the record title cloud created by the erroneous deed. Appellant testified, under oath, without equivocation, in the trial of this action that he claims no other property than the 10 by 24 foot parcel of land which is the actual well site. But respondents did, in fact, pay all taxes during all times after 1952 on the true well site, as well as on all the improvements thereon.

 Appellant, in his testimony, clearly disclaims any interest in the property the description of which is contained

in the deed, the pleadings and the decree. The evidence shows without contradiction that the described parcel is not the true well site. The informality of the pleading as the basis for removing the title cloud caused by the erroneous deed description was not the subject of any complaint by appellant to the trial court. The evidence was thus ample to support the conclusion of the trial court that appellant was not the owner of the described property, and that respondents are the true owners.

As to the claim that the finding was defective respecting the payment of taxes, this may be regarded as mere surplusage in view of appellant's unequivocal testimony that he claimed no interest in the described property. ▆▆▆ As was said in *Gillette* v. *Gillette*, 180 Cal.App.2d 777, 786 [11] [4 Cal.Rptr. 700]:

" 'If there are unobjectionable findings that amply support the judgment, findings on other issues become immaterial, and the fact that they are contrary to the evidence is not ground for reversal. It is only when a judgment rests on some particular findings for its validity and support that lack of sufficient evidence to support the findings become material. Complaint may not be made of an unsupported finding that, had it been made the other way, would not have affected the judgment.' " See also *Lower Yucaipa Water Co.* v. *Hill*, 157 Cal.App.2d 306, 312 [320 P.2d 877].

We find no merit in these apparent points of appeal.

### THE JUDGMENT

▆▆▆ Apparently appellant contends that no judgment quieting title should have been awarded as against Velna A. Kneale because she was not a party to action No. 74299. First, it should be again noted that Velna never appealed. Furthermore, title was put in issue by the cross-complaint and answer thereto in case No. 75029 in which Velna was a party. Likewise, there was placed in issue in the same case her liability on the water bill.

### THE PRINCIPAL QUESTION

▆▆▆ Appellant states that "The principal question is whether or not William H. Kneale at any time subsequent to April 27, 1951, sold, assigned and transferred his interest, or the interest of Mattie Kneale, in the subject real property and whether thereafter under Claim of Right the respondents did as stated in the Findings of Fact, remain in open, notorious,

exclusive and adverse possession of said parcel of real property for more than five years prior to the filing of this action (January 12, 1959), claiming it as their own and had *paid all taxes and assessments* levied upon said real property for more than five years prior to January 12, 1959.''

If this relates to the actual well site, it is clear from the evidence hereinbefore recited that appellant did sell back to respondents the well site and water system in 1952, under the written contract of sale; that the purchase price was fully paid; and that respondents went into immediate possession which was open, notorious, exclusive, adverse and under claim of right, and paid all taxes thereon during the intervening years up to the date of trial in 1960. The evidence overwhelmingly supports such a conclusion by the trial court.

If appellant refers to the erroneously described land, he disclaimed, under oath, all claim to it. The trial court's conclusion is correct.

### THE WATER CHARGES

Appellant appears to contend that there was no agreement by appellant to pay for water, and no evidence of the value of the water delivered. Appellant testified that his deceased wife, Mattie, was during her life the manager of community affairs. The evidence before the trial court includes the statements of her agreement with reference thereto, and the credits given on the contract by which respondents bought the well site. It also includes all the evidence of the trial before the Public Utilities Commission in which the testimony relates the domestic charge discussed with and billed to appellant by Rhoads; the basis of comparable charges by a nearby public utility, the charges made to others on the system both by appellant and later by respondents, capital investment, and various other probative items. We are satisfied that the evidence was sufficient to support the court's finding. As to Velna A. Kneale, it must again be noted that she has not appealed.

The judgment and decree are affirmed.

Griffin, P. J., and Coughlin, J., concurred.